**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-1334**

_____

FREDERICK AIKENS,

Plaintiff – Appellant,

v.

WILLIAM E. INGRAM, JR., individually and in his capacity as
Adjutant General of the North Carolina Army National Guard;
PETER VON JESS, individually and in his capacity as
Lieutenant Colonel of the North Carolina National Guard,

Defendants – Appellees.

_____

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.   Terrence W. Boyle,
District Judge.  (5:11-cv-00371-BO)

_____

Argued:  February 1, 2013               Decided:  May 2, 2013

_____

Before KING, SHEDD, and THACKER, Circuit Judges.

_____

Reversed and remanded by unpublished per curiam opinion.  Judge
Thacker wrote a separate opinion concurring in part and
dissenting in part.

_____

**ARGUED:**  William Woodward Webb, Sr., EDMISTEN & WEBB, Raleigh,
North Carolina, for Appellant.   Jess D. Mekeel, NORTH CAROLINA
DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.
**ON BRIEF:** William Woodward Webb, Jr., THE EDMISTEN, WEBB & HAWES
LAW FIRM, Raleigh, North Carolina, for Appellant.   Roy Cooper,
North Carolina Attorney General, Raleigh, North Carolina, for
Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Frederick Aikens, who served for thirty-two years in the North Carolina Army National Guard, herein attempts for the second time to have his claims against former colleagues William E. Ingram, Jr., and Peter von Jess heard on the merits. In the protracted first round of proceedings, the district court granted the defendants' motion to dismiss for lack of jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the ground that Aikens was required, but had failed, to exhaust remedies with the Army Board for Correction of Military Records (the "ABCMR"). See Aikens v. Ingram, No. 5:06-cv-00185 (E.D.N.C. Sept. 13, 2007) (the "First Dismissal Order").[1] Aikens then took this matter to the ABCMR, but, as Aikens had predicted it would, the ABCMR deemed itself powerless to act on his application.

Consequently, Aikens returned to the district court, asserting that he was entitled to relief from the First Dismissal Order under Federal Rule of Civil Procedure 60(b) as a result of the court's erroneous exhaustion ruling. The court nonetheless held a different view, that Aikens was ineligible for Rule 60(b) relief. See Aikens v. Ingram, No. 5:06-cv-00185

---

[1] The district court's First Dismissal Order is published as Aikens v. Ingram, 513 F. Supp. 2d 586 (E.D.N.C. 2007).

(E.D.N.C. Nov. 5, 2008) (the "Rule 60(b) Order").[2]  On appeal, a three-judge panel of our Court affirmed the judgment by a 2-1 vote, see Aikens v. Ingram, 612 F.3d 285 (4th Cir. 2010), a decision that was subsequently vacated with the grant of rehearing en banc.  Ultimately, however, we again affirmed the judgment, this time by a 7-5 vote.  See Aikens v. Ingram, 652 F.3d 496 (4th Cir. 2011) (en banc) ("Aikens I").

Two days after we issued our en banc Aikens I decision, Aikens initiated this second round of proceedings in the Eastern District of North Carolina, asserting claims against Ingram and von Jess that are identical to previously dismissed claims.  The defendants then successfully moved for dismissal under Rule 12(b)(6) — the district court having credited their contention that the claims are now time-barred.  See Aikens v. Ingram, No. 5:11-cv-00371 (E.D.N.C. Feb. 27, 2012) (the "Second Dismissal Order").[3]  In the appeal now before us, Aikens contests the Second Dismissal Order, and, as explained below, we reverse and remand for further proceedings.

---

[2] The unpublished Rule 60(b) Order is found at J.A. 91-99. (Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

[3] The unpublished Second Dismissal Order is found at J.A. 165-70.

I.

A.

Aikens's allegations against defendants Ingram and von Jess are described more thoroughly in Aikens I. It serves our present purposes to note simply that Aikens last served in the North Carolina Army National Guard with the rank of Colonel and as commanding officer of the 139th Rear Operations Center. Aikens alleges that between April and November 2003, while he was deployed to Kuwait in support of Operation Iraqi Freedom, the defendants illegally intercepted his email and forwarded it to his wartime commanders to substantiate allegations that he had engaged in a hostile command environment and inappropriate relationships with women. According to Aikens, the defendants' conduct led to several investigations and compelled his constructive discharge from the National Guard.

As he did in his initial complaint (the "First Complaint"), Aikens asserts two claims against the defendants in his present complaint (the "Second Complaint"): a 42 U.S.C. § 1983 claim for violation of his Fourth Amendment rights, and a claim for invasion of privacy under North Carolina law.[4] It is accepted

_____

[4] Aikens filed the First Complaint on April 27, 2006, and amended it on May 4, 2006. The First Complaint differed from the Second Complaint only in that the former alleged the state law claim, plus a separate federal cause of action, against two additional defendants. By the First Dismissal Order, those two
(Continued)

5

that Aikens's claims accrued on November 24, 2003, when Aikens discovered that his email had been intercepted, and that each claim is subject to a three-year statute of limitations. Thus, absent a tolling thereof, Aikens's claims would have been barred after November 24, 2006. He filed his First Complaint with 212 days left in the unmodified limitations period, on April 27, 2006.

The district court issued its First Dismissal Order on September 13, 2007, dismissing without prejudice the First Complaint against Ingram and von Jess "so that plaintiff may exhaust his intraservice administrative remedies with ABCMR." First Dismissal Order 12. The court observed that "[d]ismissing the [First Complaint] without prejudice grants deference to the military to handle its own affairs." Id. at 8. Additionally, the court stated that, "[i]f the ABCMR does not have jurisdiction, it will take no action and plaintiff may return to federal court." Id. A conforming judgment was entered on September 14, 2007.

---

defendants were dismissed without prejudice for failure to achieve service of process. See First Dismissal Order 10-12. The First Dismissal Order also reflects the court's understanding, with respect to Ingram and von Jess, that Aikens by then was pursuing his § 1983 claim only and was not seeking relief under North Carolina law. See id. at 4.

6

Aikens filed his application with the ABCMR less than a month later, on October 10, 2007. The ABCMR rejected Aikens's application for lack of jurisdiction on February 6, 2008, within four months of the First Dismissal Order. The ABCMR's letter to Aikens explained that "it has been determined that your application and the remedy you seek is not within the purview of the ABCMR." J.A. 44.

On March 31, 2008, within two months of the ABCMR's decision, Aikens returned to the district court, moving under Rule 60(b) of the Federal Rules of Civil Procedure for relief from the First Dismissal Order. Aikens specifically cited clause (6) of Rule 60(b), which authorizes a court to relieve a party from a final judgment for "any other reason [not spelled out in clauses (1)-(5)] that justifies relief," and which requires the movant to demonstrate "extraordinary circumstances," see Valero Terrestrial Corp. v. Paige, 211 F.3d 112, 118 n.2 (4th Cir. 2000). In so doing, Aikens explained to the court that Rule 60(b)(6) relief was necessary to avoid any statute of limitations problem, and he indicated that he was entitled to such relief because the court had erred in ordering exhaustion of intraservice remedies and thereby jeopardizing the timeliness of his claims. Aikens also invoked the court's statement in the First Dismissal Order that, if he were proved

7

correct about the ABCMR's lack of jurisdiction, he could "return to federal court."

The district court issued its Rule 60(b) Order more than seven months later, on November 5, 2008. The court clarified therein that, in stating in the First Dismissal Order that Aikens could "return to federal court," it "was not implying that plaintiff could return to court in this action." Rule 60(b) Order 7. "Rather," the court explained, it "was making the unremarkable observation that if the ABCMR determined that it lacked jurisdiction, nothing in the [First Dismissal Order] would prevent plaintiff from filing a new action against Ingram and von Jess." Id.

Nevertheless, the district court also recognized that the three-year statute of limitations on Aikens's § 1983 claim had "seemingly expired . . . on November 24, 2006," more than nine months before the court issued its First Dismissal Order. See Rule 60(b) Order 8. The court found it unnecessary to "resolve [the limitations period] issue definitively," explaining that, "[i]f plaintiff files a new action, and defendants assert the statute-of-limitations defense, the court will then address the issue." Id. at 8 n.1. For purposes of resolving Aikens's Rule 60(b) motion, the court deemed it sufficient to conclude that Aikens was at fault for his statute of limitations predicament and thus ineligible for Rule 60(b)(6) relief. Id. at 8-9

8

(observing that Aikens should have attempted to exhaust intraservice remedies prior to filing First Complaint, or should have filed First Complaint earlier in limitations period in anticipation of court's ruling that exhaustion was required).

On November 10, 2008, Aikens promptly noted his appeal to this Court, where the matter resided for nearly three years, undergoing both panel and en banc consideration. By our en banc Aikens I decision of July 13, 2011, the seven-judge majority "conclude[d] that the district court did not abuse its discretion in finding that Aikens did not demonstrate the 'extraordinary circumstances' necessary to employ Rule 60(b)(6) as a bypass around routinely available procedures, particularly when his failure to use those procedures was the product of his strategic litigation choices." 652 F.3d at 502. The majority identified "multiple procedural mechanisms that Aikens could have used to pursue his claim," including an appeal in this Court from the First Dismissal Order, a request for a stay pending exhaustion of intraservice remedies, and the filing of a new action following such exhaustion. Id. at 502-03.

Significantly, five of the seven judges of the Aikens I majority joined in a concurring opinion proclaiming that the district court could have found "extraordinary circumstances" meriting Rule 60(b)(6) relief, but did not abuse its discretion in ruling to the contrary. See 652 F.3d at 504-05 (Diaz, J.,

9

concurring) (acknowledging that, "[w]ere I the district judge in this case, I might well have reached a conclusion different from that below and granted Aikens's Rule 60(b)(6) motion"). Meanwhile, the five dissenting judges jointly declared that the district court not only could, but should, have found "extraordinary circumstances" and reinstated the First Complaint. See id. at 512-13 (King, J., dissenting) ("Put simply, the abuse of discretion standard of review does not confer upon a district court carte blanche to close its doors to a litigant who is merely following the court's own advice.").

With respect to the filing of a new action, the full Aikens I majority noted that, "[a]t oral argument, Aikens' counsel conceded that had he filed a new action instead of a Rule 60(b)(6) motion, it would have been timely filed and not subject to a statute of limitations defense." 652 F.3d at 503. The majority also observed, however, that it was "not clear when Aikens' cause of action accrued, and Aikens' counsel agreed that he did not know what tolling provisions might apply or how they might apply." Id. The majority abstained from any effort to pinpoint the beginning and end of the applicable limitations period — which thus, in the wake of Aikens I, remained an "open question." See id. at 516-17 (King, J., dissenting) (recognizing that, "notwithstanding counsel's understandable efforts to keep from conceding as stale any sort of claim his

10

client may yet pursue, the precise date by which Aikens was required to file in order to forestall a legitimate limitations defense remains very much an open question").

Unlike the seven judges in the Aikens I majority, who refrained from any assessment of whether Aikens could yet assert timely claims, the five dissenting judges delved into the issue and agreed "that Aikens may yet have his day in court notwithstanding the majority's decision today." 652 F.3d at 518 (King, J., dissenting). The dissenters so concluded because "[t]he North Carolina courts recognize the general principle that 'time frames may be tolled where equitable considerations justify their suspension.'" Id. at 517 (quoting Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Va. Pension Fund, 718 F.2d 628, 644 (4th Cir. 1983), quoted in Fairway Outdoor Adver. v. Edwards, 678 S.E.2d 765, 771 (N.C. Ct. App. 2009)).

### B.

On July 15, 2011, when our en banc Aikens I decision was just two days old, Colonel Aikens filed the Second Complaint in the district court, re-asserting his 42 U.S.C. § 1983 and North Carolina invasion of privacy claims against defendants Ingram and von Jess. Seven months later, on February 27, 2012, the court issued its Second Dismissal Order, granting the defendants' motion to dismiss on the ground that the Second

11

Complaint's claims were barred by the applicable three-year statutes of limitation.

As the district court explained, because "§ 1983 does not provide for a statute of limitations, the analogous state statute of limitations is applied." Second Dismissal Order 3 (citing Nat'l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1161 (4th Cir. 1991)); see also Hardin v. Straub, 490 U.S. 536, 539 (1989) (instructing that "[l]imitations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules" (internal quotation marks omitted)). "In North Carolina, the analogous state statute of limitations is three years." Second Dismissal Order 3 (citing Nat'l Adver. Co., 947 F.2d at 1162). A North Carolina "invasion of privacy claim is also governed by a three year statute of limitations." Id. (citing Losing v. Food Lion, L.L.C., 648 S.E.2d 261, 265 (N.C. Ct. App. 2007)).

Applying those North Carolina statutes of limitation, the district court recognized "that the date upon which Plaintiff's causes of action accrued is apparent on the face of his complaint" — that date being November 24, 2003, when Aikens allegedly was first informed that Ingram had used illegal means to obtain Aikens's email. See Second Dismissal Order 4. The court then determined that, "[e]ven if neither the time during which Plaintiff's original district court action was pending nor

12

the time during which his ABCMR proceeding was pending should be counted against the limitations period, Plaintiff's clock began to run again following the adjudication of his claim by the ABCMR." Id. at 4-5. "Accordingly," the court concluded that "Plaintiff's limitations period more than expired during the three years between dismissal by the ABCMR on February 6, 2008, and Plaintiff's filing of the instant action on July 15, 2011." Id. at 5.

In ruling thusly, the district court rejected Aikens's contention that, in the circumstances of these proceedings, the doctrine of equitable tolling further extended the limitations period for the time that his Rule 60(b) motion was pending in that court and on appeal. The district court acknowledged — "as discussed by the dissent in [Aikens I]" — that "North Carolina courts have certainly recognized the principle of equitable tolling." Second Dismissal Order 5. But the district court perceived that North Carolina courts "have only found [equitable tolling's] application appropriate in circumstances where the actions of the defendant have somehow caused the plaintiff to fail to pursue his claim within the limitations period." Id. (emphasis omitted). The district court observed that the defendants herein had done nothing "that might be construed as deceitful or misleading such that Plaintiff's cause of action was concealed." Id. Moreover, the court deemed itself obliged

13

to consider "the actions or inactions of Plaintiff" discussed by the Aikens I majority in affirming the court's prior denial of Rule 60(b)(6) relief. Id. at 5-6 (citing Aikens I, 652 F.3d at 502-03).

The district court summarized that, "[b]ecause Plaintiff's complaint in this action was filed well-outside the three year statutes of limitations, and the Court finds no basis upon which to equitably toll the applicable limitations periods, Plaintiff's complaint must be dismissed." Second Dismissal Order 6. Aikens has filed a timely notice of appeal from the judgment entered on February 29, 2012, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

Generally, we review de novo a district court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). See Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). When a dismissal on limitations grounds is predicated on the denial of equitable tolling, however, we review the court's ruling for abuse of discretion. See Rouse v. Lee, 339 F.3d 238, 247 n.6 (4th Cir. 2003) (en banc). In any event, "a district court by definition abuses its discretion when it makes an error of law." See Rice v. Rivera, 617 F.3d 802, 811 (4th Cir. 2010) (internal quotation marks omitted).

14

III.

As noted above, there were 212 days left in the three-year limitations period when Colonel Aikens filed his First Complaint on April 27, 2006. Under North Carolina law, the statute of limitations was tolled between April 27, 2006, and September 13, 2007, when the district court issued its First Dismissal Order. See Long v. Fink, 342 S.E.2d 557, 559 (N.C. Ct. App. 1986) (explaining that "the statute of limitations is tolled when suit is properly instituted, and it stays tolled as long as the action is alive" (emphasis omitted)). Only 200 days elapsed between the court's issuance of the September 13, 2007 First Dismissal Order and Aikens's submission of his Rule 60(b) motion on March 31, 2008, and there was just a two-day gap between our en banc Aikens I decision of July 13, 2011, and Aikens's filing of his Second Complaint on July 15, 2011. Thus, the Second Complaint's claims are timely if the doctrine of equitable tolling was operational during the three-year-plus period that the Rule 60(b) motion underwent consideration by first the district court and then our Court.

A.

When it declined to apply equitable tolling herein, the district court evinced an understanding that such doctrine equates to equitable estoppel. Indeed, each of the North Carolina decisions cited in the Second Dismissal Order — Duke

15

University v. Stainback, 357 S.E.2d 690 (N.C. 1987), and Nowell v. Great Atlantic & Pacific Tea Co., 108 S.E.2d 889 (N.C. 1959) — involved the use of equitable estoppel to disallow statute of limitations defenses in circumstances where the plaintiffs' delays in filing claims were engendered by the conduct of defendants. The Supreme Court of North Carolina explained in those decisions that "[e]quity will deny the right to assert the defense of the statute of limitations when delay has been induced by [the defendant's] acts, representations, or conduct, the repudiation of which would amount to a breach of good faith." Stainback, 357 S.E.2d at 693 (paraphrasing Nowell, 108 S.E.2d at 891). Other state and federal courts are generally in agreement that equitable estoppel requires wrongdoing by the defendant — wrongdoing that, as the district court properly recognized, is absent from this case. See Second Dismissal Order 5.

Importantly, however, equitable estoppel is not necessarily the same as equitable tolling. See Chung v. U.S. Dep't of Justice, 333 F.3d 273, 278-79 (D.C. Cir. 2003) (describing differences between equitable estoppel and equitable tolling); Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir. 1990) (same); Felty v. Graves-Humphreys Co., 785 F.2d 516, 519 (4th Cir. 1986) (same). When distinguishing the two doctrines, courts have generally clarified that equitable estoppel requires

16

the defendant's wrongdoing, while equitable tolling does not. See, e.g., Rhodes v. Guiberson Oil Tools Div., 927 F.2d 876, 878 (5th Cir. 1991) ("Equitable tolling focuses on the [plaintiff], not on any possible misconduct by the [defendant]."); Williams v. Bd. of Review, 948 N.E.2d 561, 567 (Ill. 2011) ("Unlike the related doctrine of equitable estoppel, equitable tolling requires no fault on the part of the defendant."); Kaiser v. Umialik Ins., 108 P.3d 876, 880 (Alaska 2005) ("[E]quitable estoppel turns on wrongdoing by the party invoking the statute of limitations, while our equitable tolling rule looks only to the claimant's circumstances . . . .").

Some courts "have used the terms 'equitable tolling' and 'equitable estoppel' interchangeably." McAllister v. FDIC, 87 F.3d 762, 767 n.4 (5th Cir. 1996). At times, both the Supreme Court of the United States and our Court have referred to "equitable tolling" when describing "equitable estoppel." See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) (observing that "[w]e have allowed equitable tolling in situations . . . where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass"); Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) (noting that equitable tolling has been applied where "the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant"

17

(internal quotation marks omitted)). But, typical of other courts, neither we nor the Supreme Court has limited equitable tolling to equitable estoppel-type circumstances.

Furthermore, courts have employed equitable tolling "in a variety of contexts and have developed differing parameters for its application." See Hooper v. Ebenezer Senior Servs. & Rehab. Ctr., 687 S.E.2d 29, 32-33 (S.C. 2009) (recognizing that "[t]he equitable power of a court is not bound by cast-iron rules but exists to do fairness and is flexible and adaptable to particular exigencies" (internal quotation marks omitted)). Pertinent here, for example, the Supreme Court has "allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period," including where the plaintiff timely filed his complaint in the wrong court. See Irwin, 498 U.S. at 96 & n.3 (citing Burnett v. N.Y. Cent. R.R. Co., 380 U.S. 424 (1965)). In deeming equitable tolling to be appropriate in such circumstances, the Supreme Court has reasoned that tolling is justified because the defendant received timely notice of the plaintiff's claims, there was no resulting prejudice, and the plaintiff acted with diligence. See Burnett, 380 U.S. at 429-30; cf. Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 151-52 (1984) (rejecting equitable tolling request where, though there was an "absence of

18

prejudice," plaintiff "fail[ed] to act diligently" and did not file any complaint within applicable limitations period).

Those three concerns underlie an equitable tolling test that has been adopted by the highest courts of several states. Under that test, as set forth by the Supreme Court of Alaska,

> the doctrine of equitable tolling has been applied to halt the running of the statute of limitations when multiple legal remedies are available to the plaintiff and time runs out on one remedy while the plaintiff is pursuing another unavailing remedy. A claim for tolling has three elements: (1) pursuit of the initial remedy must give defendant notice of plaintiff's claim, (2) defendant's ability to gather evidence must not be prejudiced by the delay, and (3) plaintiff must act reasonably and in good faith.

Kaiser, 108 P.3d at 881-82 (footnotes, alterations, and internal quotation marks omitted); see also, e.g., McDonald v. Antelope Valley Cmty. Coll. Dist., 194 P.3d 1026, 1031-32 (Cal. 2008) (citing Collier v. City of Pasadena, 191 Cal. Rptr. 681 (Cal. Ct. App. 1983)); Let the People Vote v. Bd. of Cnty. Comm'rs, 120 P.3d 385, 389 (Mont. 2005). Those courts have "warn[ed] against application of [equitable tolling] to what is at best a garden variety claim of excusable neglect," Weidow v. Uninsured Emp'rs Fund, 246 P.3d 704, 709 (Mont. 2010) (internal quotation marks omitted), but have found equitable tolling to be appropriate "where a first action, embarked upon [reasonably and] in good faith, is found to be defective for some reason," McDonald, 194 P.3d at 1032. In the latter scenario, equitable

19

tolling is fair to both parties, in that "it secures the benefits of the statutes of limitation for defendants without imposing the costs of forfeiture on plaintiffs." Collier, 191 Cal. Rptr. at 686; see also Weidow, 246 P.3d at 709 ("[L]imitation periods are designed to ensure justice by preventing surprise, but no surprise exists when defendants are already on notice of the substantive claims being brought against them." (internal quotation marks omitted)).

B.

For its part, North Carolina has ample precedent discussing equitable estoppel — including Stainback and Nowell — but no controlling decision addressing equitable tolling. Thus, our job is to predict how the Supreme Court of North Carolina, as the state's highest court, would rule on the legal issues underlying Aikens's equitable tolling request. Cf. Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co., 514 F.3d 327, 329 (4th Cir. 2008) ("Because we are sitting in diversity, our role is to apply the governing state law, or, if necessary, predict how the state's highest court would rule on an unsettled issue."). In making our prediction, decisions of the Court of Appeals of North Carolina, as the state's intermediate appellate court, "constitute the next best indicia of what state law is." Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 957 F.2d 1153, 1156 (4th Cir. 1992) (internal quotation marks omitted).

20

In Fairway Outdoor Advertising v. Edwards, the North Carolina court of appeals recognized that "'[t]ime frames may be tolled where equitable considerations justify their suspension.'" 678 S.E.2d 765, 771 (N.C. Ct. App. 2009) (quoting Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Va. Pension Fund, 718 F.2d 628, 644 (4th Cir. 1983)). Specifically, the doctrine of equitable tolling informed the court's analysis of whether the plaintiff had acted within a reasonable time to remove a billboard from the defendants' premises following termination of the relevant lease. In that regard, the court explained that "[t]he question of reasonable time in this case may be answered by applying the legal principle that diligent prosecution of related non-frivolous litigation should be taken into account in determining whether a party's time for action has passed." Id. On the facts before it — that the plaintiff had brought a non-frivolous, albeit unsuccessful, declaratory judgment action the day after the lease expired and attempted to remove the sign within two weeks of the decision in the defendants' favor — the court concluded that the plaintiff had "not yet exhausted the reasonable time allowed for removal of the sign." Id.

Similarly, in Republic Industries, we determined that a non-frivolous challenge to the constitutionality of certain arbitration procedures tolled the running of the statutory

21

period for initiating those procedures. See 718 F.2d at 644. In so ruling on the premise that "time frames may be tolled where equitable considerations justify their suspension," id., we relied on Burnett, wherein the Supreme Court of the United States applied equitable tolling to save the second Federal Employers Liability Act ("FELA") suit of a litigant who had first timely filed in the wrong court. See Burnett, 380 U.S. at 429-30. The Burnett decision has also made several appearances in opinions of the North Carolina court of appeals. See Carlisle v. CSX Transp., Inc., 668 S.E.2d 98, 105-07 (N.C. Ct. App. 2008) (applying Burnett's equitable tolling principles to FELA action pending in North Carolina state courts); Cacha v. Montaco, Inc., 554 S.E.2d 388, 393 (N.C. Ct. App. 2001) (explaining, in course of rejecting plaintiffs' claim for equitable tolling of statute of repose, that Burnett "sp[oke] only to tolling of statutes of limitation"); Bruce v. Bruce, 339 S.E.2d 855, 858 (N.C. Ct. App. 1986) (acknowledging that the benefit of statutes of limitation "is often outweighed 'where the interests of justice require vindication of the plaintiff's rights'" (quoting Burnett, 380 U.S. at 428)).[5]

---

[5] Like many other courts, including the Supreme Court of the United States and our Court, the North Carolina court of appeals has used the term "equitable tolling" to describe "equitable estoppel," see Town of Pineville v. Atkinson/Dyer/Watson Architects, P.A., 442 S.E.2d 73, 74-75 (N.C. Ct. App. 1994), but (Continued)

It is not surprising that the North Carolina court of appeals has not only freely invoked Burnett and other equitable tolling decisions, but also has treated them as uncontroversial. After all, "[t]ime requirements in lawsuits between private litigants are customarily subject to equitable tolling[.]" Irwin, 498 U.S. at 95 (internal quotation marks omitted). Moreover, although the North Carolina supreme court has not explicitly endorsed equitable tolling, that doctrine is entirely consistent with the court's jurisprudence. Cf. Liberty Mut. Ins. Co., 957 F.2d at 1156 (observing that decisions of a state's intermediate appellate court "may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise" (internal quotation marks omitted)).

In harmony with the widely accepted purpose of equitable tolling, the North Carolina supreme court has aptly described time limitations as "strik[ing] a delicate balance between the rights of the diligent plaintiff who should not be barred from pursuing a meritorious claim and the defendant who deserves protection from stale claims after a viable defense may be weakened because of dead witnesses or forgotten facts." Black

has also, when it needed to do so, differentiated between the two doctrines, see Cacha, 554 S.E.2d at 393.

23

v. Littlejohn, 325 S.E.2d 469, 476 (N.C. 1985). Even the court's equitable estoppel decisions — which deem "not essential" any showing of "[a]ctual fraud, bad faith, or an intent to mislead or deceive" — reflect more concern for protecting the plaintiff than punishing the defendant. Stainback, 357 S.E.2d at 692; accord Gore v. Myrtle/Mueller, 653 S.E.2d 400, 405 (N.C. 2007) ("There need not be actual fraud, bad faith, or an intent to mislead or deceive for the doctrine of equitable estoppel to apply."). The court has emphasized that equitable estoppel's "'compulsion is one of fair play,'" Nowell, 108 S.E.2d at 891 (quoting McNeely v. Walters, 189 S.E. 114, 115 (N.C. 1937)), a notion that comports with the recognition of equitable tolling.

We are thus convinced that North Carolina is among the jurisdictions that embrace the mainstream view that equitable tolling — and not just equitable estoppel — may serve to extend a statute of limitations. Accordingly, we conclude that the district court abused its discretion by ruling in its Second Dismissal Order, as a matter of North Carolina law, that equitable tolling applies only in equitable estoppel-type circumstances.

C.

The equitable tolling test most appropriate to the facts of Colonel Aikens's case derives from the Burnett decision of the

24

Supreme Court of the United States. Under that test, which the Burnett Court applied to a plaintiff who had timely filed his first complaint in the wrong court, we must consider whether defendants Ingram and von Jess received timely notice of Aikens's claims, whether the defendants have been prejudiced by delay of the litigation, and whether Aikens has acted with diligence. See 380 U.S. at 429-30; see also, e.g., Kaiser, 108 P.3d at 881-82 (recognizing that a Burnett-type test is appropriate where "multiple legal remedies [were] available to the plaintiff and time [ran] out on one remedy while the plaintiff [was] pursuing another unavailing remedy").

First of all, there is no dispute that the defendants had timely notice of Aikens's claims, in that he filed the First Complaint with 212 days left in the unmodified limitations period, and subsequently re-alleged the same claims in the Second Complaint. Furthermore, there has been no showing that the defendants have suffered prejudice; rather, the defendants have simply pointed to the passage of time since Aikens's claims accrued, without identifying any specific way in which they have been prejudiced, such as the loss of critical evidence.

Finally, we are satisfied that Aikens acted both diligently and reasonably in filing his Rule 60(b) motion, followed by the Second Complaint. See Burnett, 380 U.S. at 429-30 (requiring diligence); Kaiser, 108 P.3d at 881-82 (necessitating

25

reasonableness). As for diligence, since the district court issued its First Dismissal Order, the longest time Aikens has taken to pursue a next step in the pursuit of his claims is fifty-four days (less than eight weeks) — the amount of time that passed between the February 6, 2008 decision of the ABCMR repudiating jurisdiction over Aikens's claims and the filing of his Rule 60(b) motion in the district court on March 31, 2008. At that point, the applicable limitations period, having been tolled during the pendency of the First Complaint, had not yet run. Moreover, fifty-four days of delay, weighed in the context of six years of Aikens's persistent and steadfast efforts to sustain this litigation, hardly evidences a lack of diligence.

With respect to reasonableness, Aikens's Rule 60(b) motion cannot be called anything but reasonable. At the time of the motion, the defendants had taken the position — a position that they continue to espouse — that the statutes of limitation on Aikens's claims had expired on November 24, 2006, more than nine months prior to the district court's issuance of its First Dismissal Order. Meanwhile, under Aikens's interpretation of the First Dismissal Order, the court had assured him that he could "return to federal court" if he were proved correct about the ABCMR's lack of jurisdiction. See First Dismissal Order 8. Although the court thereafter denied Rule 60(b)(6) relief, clarifying that it had not meant to "imply[] that plaintiff

26

could return to court in [the same] action," see Rule 60(b) Order 7, five of the twelve judges of our en banc Court agreed with Aikens's interpretation. See Aikens I, 652 F.3d at 509 (King, J., dissenting) (observing that, in light of the district court's "explicit[] assur[ance]" that Aikens "could 'return to federal court,'" he "understandably chose to file his Rule 60(b) motion").

Even more significantly, ten of our twelve judges recognized that the district court could have granted Aikens's Rule 60(b) motion in the exercise of its discretion. See Aikens I, 652 F.3d at 505 (Diaz, J., concurring) ("While the principal dissent convincingly demonstrates that the district court could have granted Aikens's motion, it fails to establish that failure to grant the motion was so beyond the pale that it constitutes an abuse of discretion." (emphasis omitted)); id. at 512 (King, J., dissenting) ("[H]ad the district court been inclined to grant Aikens's Rule 60(b) motion, it certainly had the discretion to do so . . . ."). As such, Rule 60(b)(6) relief was a feasible legal remedy that Aikens reasonably pursued.[6]

---

[6] Of course, our Aikens I majority concluded that Aikens's neglect in availing himself of some additional avoidance options, such as appealing the First Dismissal Order or requesting a stay, supported the district court's conclusion that Aikens had failed to demonstrate the extraordinary circumstances necessary to reopen the First Complaint pursuant to Rule 60(b)(6). See 652 F.3d at 502-03; see also Second (Continued)

27

Because of the manifest presence here of each of the relevant conditions for equitable tolling — notice, lack of prejudice, and diligent and reasonable action — we conclude that equitable tolling was operational during the period that Aikens's Rule 60(b) motion was being considered by the district court and our Court.  Accordingly, the § 1983 and state law

---

Dismissal Order 5-6 (suggesting that "the actions or inactions of Plaintiff" discussed by the Aikens I majority must inform the present equitable tolling analysis).  Importantly, however, the pertinent equitable tolling test does not require that Aikens made perfect litigation choices, only reasonable ones.  See, e.g., Lozeau v. GEICO Indem. Co., 207 P.3d 316, 319-20 (Mont. 2009) (applying equitable tolling where plaintiff first filed in tribal court that was later determined to lack jurisdiction); McDonald, 194 P.3d at 1029 (same where plaintiff first voluntarily pursued internal administrative remedy); Solomon v. Interior Reg'l Hous. Auth., 140 P.3d 882, 884-85 (Alaska 2006) (same where plaintiff first filed in federal court).

Some other equitable tolling tests, applicable in different contexts, necessitate a showing of extraordinary circumstances. See, e.g., Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (observing, with respect to habeas corpus claims, that "[e]quitable tolling is appropriate when, but only when, extraordinary circumstances beyond the petitioner's control prevented him from complying with the statutory time limit" (alteration and internal quotation marks omitted)).  In any event, because we deal here with the superficially untimely Second Complaint, which Aikens was compelled to file as a consequence of our en banc affirmance of the denial of Rule 60(b)(6) relief, an assessment of extraordinary circumstances for purposes of equitable tolling would encompass new factors. For example, we certainly would consider the fact that we conducted an en banc proceeding, which was itself an extraordinary event. See Fed. R. App. P. 35(a) (explaining that rehearing en banc is disfavored and will not be granted except to maintain uniformity of decisions or to resolve questions "of exceptional importance").

28

claims alleged in his subsequent Second Complaint are not time-barred, and the contrary Second Dismissal Order must be reversed.[7]

IV.

Pursuant to the foregoing, we reverse the Second Dismissal Order and remand for such other and further proceedings as may be appropriate.

REVERSED AND REMANDED

---

[7] Of course, as our good colleague emphasizes in her separate opinion, another option would be to vacate and remand for the district court to apply the pertinent equitable tolling test in the first instance. We see such a remand as unnecessary here, however. There is no real dispute concerning notice, prejudice, or diligence, leaving solely the question of whether Aikens acted reasonably in filing his Rule 60(b) motion. The district court's only sustainable answer to that question would be "yes," since ten of our twelve judges in Aikens I agreed that Aikens's Rule 60(b) motion could have been granted, thereby rendering the motion patently reasonable.

29

THACKER, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's conclusion that the district court erred, as a matter of law, in holding that North Carolina would not recognize the doctrine of equitable tolling outside of the equitable estoppel context.

However, with all due respect to my good colleagues, I cannot agree with the majority's decision to determine, for the first time on appeal, that the balance of the equities in this case warrants the application of equitable tolling at this point. Rather, in my view, this matter should be remanded to permit the district court to exercise its discretion as to the application of equitable tolling to the facts presented. Accordingly, I respectfully concur in part and dissent in part.

In this case, "[t]he operative review standard in the end will depend on what aspect of the lower court's decision is challenged." Belot v. Burge, 490 F.3d 201, 206 (2d Cir. 2007). Specifically, to the extent the district court's decision rested on a conclusion of law, that aspect of the decision should be reviewed de novo. See Smith v. Pennington, 352 F.3d 884, 892 (4th Cir. 2003) ("[T]o the extent a challenge to the denial of tolling is not to the existence of certain facts, but instead rests on whether those facts demonstrate a failure to bring a timely claim, resolution of this challenge turns on questions of

30

law which are reviewed de novo.") (internal quotation marks and citations omitted). To the extent the district court's decision rested on an application of law to fact, that aspect of the decision should be reviewed for an abuse of discretion. See id. ("[A]s to all circumstances other than where the relevant facts are undisputed and the district court denied equitable tolling as a matter of law, we review the denial of tolling below for abuse of discretion.") (internal citations and quotation marks omitted).

Here, the district court's opinion rested entirely on its conclusion that, as a matter of North Carolina law, equitable tolling is not cognizable outside of the equitable estoppel context. However, this conclusion was in error. As the majority properly recounts, while there is no controlling Supreme Court of North Carolina decision addressing equitable tolling, the lion's share of the pertinent authority -- including cases from the United States Supreme Court, other state appellate courts, the United States Circuit Courts of Appeal, and North Carolina intermediate appellate courts -- clearly recognizes that the doctrine of equitable tolling is more broad than the doctrine of equitable estoppel insofar as the latter requires misconduct on the part of the defendant while the former does not. As a result, I do not hesitate to concur with the majority's holding on this question.

Unfortunately, the majority and I part ways at Part C. of the majority opinion. Application of the law of equitable tolling to the facts of a particular case is ordinarily a matter within the district court's discretion in the first instance. Given that here the district court erroneously concluded that North Carolina law would not countenance equitable tolling outside of the equitable estoppel context, the district court has not yet had the opportunity to consider the operation of equitable tolling to the facts of this case. Therefore, I must dissent from this aspect of the majority opinion: I would remand this case to permit the district court to determine whether equitable tolling is, in fact, warranted on these facts.

We should be reluctant to substitute our judgment for that of the district court, as the majority does here, because, as we have long held, "the abuse of discretion standard requires a reviewing court to show enough deference to a primary decision-maker's judgment that the court does not reverse merely because it would have come to a different result in the first instance." Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 322 (4th Cir. 2008).[1]

---

[1] In concluding that the facts of this case support the operation of equitable tolling, the majority opinion relies extensively on the concurring and dissenting opinions from our previous en banc decision in Aikens I. See ante at 26. However, neither the majority nor the dissent in Aikens I (Continued)

32

As noted, the district court has not yet had the opportunity to apply the legal test announced in this opinion -- that is, whether "defendants Ingram and von Jess received timely notice of Aikens's claims, whether the defendants have been prejudiced by delay of the litigation, and whether Aikens has acted with diligence[,]" -- to the operative facts. See ante at 25 (citing Burnett v. N.Y. Cent. R. Co., 380 U.S. 424 (1965)). In my view, remand would allow the parties to properly brief the issue in light of the governing legal standard announced herein (see ante at 25) and, similarly, would permit the district court to supplement the record if needed. Cf. Davani v. Va. Dep't of Transp., 434 F.3d 712, 720 (4th Cir. 2006) ("While the district court's failure to address these legal arguments below does not alone prevent us from addressing them on appeal, prudence counsels that, because of the undeveloped state of the record, we refrain from doing so at this time.") (internal citations omitted).

Finally, I note the disposition I propose finds support in the cases of this circuit, as we have repeatedly remanded cases to the district court after finding that the district court

directs the ultimate outcome of this case on this issue at this point, as Aikens I posed a separate question -- whether this case involves sufficiently extraordinary circumstances to warrant Rule 60(b)(6) relief -- than the one posed here.

33

abused its discretion by failing to adequately take into account a recognized judicial factor or after announcing a new legal principle on appeal. See, e.g., DIRECTV, Inc. v. Rawlins, 523 F.3d 318, 330 n.14 (4th Cir. 2008) ("Having clarified the proper course of analysis that must govern a district courts exercise of discretion in awarding damages, we find it prudent to allow the district court to reconsider the application of that analysis in the first instance."); Rosciszewski v. Arete Assocs., 1 F.3d 225, 234 (4th Cir. 1993) (reversing and remanding case to permit the district court to exercise its discretion in light of a newly announced legal principle).[2]

For these reasons, I respectfully concur in part and dissent in part.

---

[2] Other courts have taken this approach in the specific context of equitable tolling. See, e.g., Townsend v. Comm'r of Soc. Sec., 415 F.3d 578 (6th Cir. 2005); Daviton v. Columbia/HCA Corp., 241 F.3d 1131 (9th Cir. 2001).