DUKE UNIVERSITY v. ROBERT L. STAINBACK, ELIZABETH STAINBACK, AND INVESTOR'S CONSOLIDATED INSURANCE COMPANY

No. 76A87

(Filed 7 July 1987)

**Estoppel § 4.7— recovery of medical costs — estoppel to plead statute of limitations**
Defendant was estopped from pleading the statute of limitations in an action by Duke University to recover costs of medical care rendered to defendant's minor son where the actions and statements of defendant, through his attorney, misled Duke reasonably to believe that it would receive payment for services rendered once a case between defendant and an insurance company was concluded, and such belief reasonably caused Duke to forego pursuing its legal remedy against defendant.

Justice MITCHELL dissenting.

Justice WEBB joins in this dissenting opinion.

APPEAL by defendant Robert L. Stainback pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, reported in 84 N.C. App. 75, 351 S.E. 2d 806 (1987), which affirmed the judgment of *Bowen, J.*, filed 1 October 1985 in Superior Court, DURHAM County. Heard in the Supreme Court 8 June 1987.

*Moore & Van Allen, by Edward L. Embree, III and Bryan E. Lessley, for plaintiff-appellee.*

*Bobby W. Rogers for defendant-appellant.*

MARTIN, Justice.

The sole issue on this appeal is whether the facts found by the trial judge support the conclusion of law that defendant Robert L. Stainback was estopped from pleading the statute of limitations against Duke in this action. We hold that the conclusion of law was properly supported and, therefore, affirm the decision of the Court of Appeals.

I.

Robert L. Stainback, Jr., a nine-year-old boy, was admitted to Duke Hospital on 21 May 1977 for treatment of injuries sustained in a collision between the bicycle he was riding and an automobile. His father, defendant Robert L. Stainback, was legally responsible for his son's medical expenses, and he also signed a written agreement accepting personal responsibility for these costs. The medical expenses totalled $42,812.90. After crediting $2,000 paid by an insurance company and $8,584.95 paid by Stainback, there remained a balance of $32,227.95 which has not been paid.

Stainback was also insured by Investors Consolidated Insurance Company (Investors), but it denied coverage of Stainback's claim. Stainback, represented by attorney Bobby W. Rogers, instituted suit against Investors and judgment for $39,606.90 was entered in favor of Stainback on 13 May 1982. Although Duke had been notified of the suit between Stainback and Investors, it neither joined nor intervened in the case. This judgment was satisfied by check payable to Stainback and Rogers, as his attorney.

Thereafter, on 18 November 1983, Duke instituted this action against Stainback. Defendant answered, pleading the applicable statute of limitations. The case was heard by the judge without a jury, and judgment was entered with findings of fact and conclusions of law, awarding Duke $32,227.95.

## II.

The trial judge made the following pertinent findings of fact:

10. Investors received some bills from Duke for Duke's treatment of Stainback, Jr. which bills indicated that "benefits" had been assigned. The last such bill was submitted by Duke to Investors on October 20, 1977.

. . . .

12. Stainback's attorney, Bobby W. Rogers, told Duke in the summer of 1978 that he was attempting to get Investors to pay the balance of the bill and would keep Duke informed of the situation.

13. On August 2, 1978, Stainback filed suit against Investors in Vance County Superior Court (STAINBACK vs. INVESTORS, Vance County File No. 78 CVS 222) seeking to recover under the Investors policy the medical expenses incurred for treatment of Stainback, Jr. at the Duke University Medical Center.

. . . .

15. On August 11, 1978, Duke (Mrs. Miriam Lamb, Compensation and Liability Officer for the Private Diagnostic Clinic (PDC) of the Duke University Medical Center) wrote to Mr. Rogers requesting information as to the "status" of Stainback's outstanding bill to the Duke PDC. This letter also notified Stainback of his outstanding bill to Duke Hospital.

. . . .

17. On August 15, 1978, Mr. Rogers wrote to Duke (Mrs. Lamb) informing it that suit had been filed against Investors.

18. Duke was therefore aware of Stainback's lawsuit against Investors, however, it made no effort to join or intervene in the STAINBACK vs. INVESTORS case.

. . . .

20. Stainback's lawsuit against Investors came on for trial on December 7, 1981. Just prior to trial Stainback's attorney Mr. Rogers spoke with Duke (a Mrs. Dunn of Duke Hospital) and was informed of the outstanding balance on Duke's bill and provided copies of the unpaid bills. Mrs. Dunn was made aware that the case was about to be tried and volunteered to come to Henderson to testify concerning the amounts of these bills and to identify these bills if necessary. Once again, Duke made no effort to intervene or otherwise join in Stainback's action against Investors to protect its (Duke's) interests.

. . . .

23. Subsequent to the ruling of the North Carolina Court of Appeals (on October 26, 1983) a Duke representative spoke by telephone with Mr. Bobby Rogers who refused to pay the Duke bill as it has been rendered.

24. Duke was made aware of the Judgment obtained by Stainback only because of a telephone call from Investors attorney, David Neal.

The trial judge made the following relevant conclusion of law:

3. With regard to Duke's claim against Stainback, however, Duke was justifiably induced by representations and conduct of Stainback and particularly his attorney Bobby Rogers to refrain from bringing suit against Stainback to collect the bill for his son's treatment at Duke and to believe that it would be paid out of the proceeds of any recovery in the STAINBACK vs. INVESTORS Vance County action and Stainback is therefore estopped to plead the statute of limitations against Duke in this action.

At the outset we note that the dissent to the majority opinion of the Court of Appeals does not raise an issue of whether the findings of fact are supported by the evidence. We only have before us the issue of whether the findings of fact support the conclusion of law that defendant is estopped to plead the defense of the statute of limitations.

Equitable estoppel may be invoked, in a proper case, to bar a defendant from relying upon the statute of limitations. *Nowell v. Tea Co.*, 250 N.C. 575, 108 S.E. 2d 889 (1959).

> The doctrine of equitable estoppel is based on an application of the golden rule to the everyday affairs of men. It requires that one should do unto others as, in equity and good conscience, he would have them do unto him, if their positions were reversed. . . . Its compulsion is one of fair play.

*McNeely v. Walters*, 211 N.C. 112, 113, 189 S.E. 114, 115 (1937) (citations omitted). Actual fraud, bad faith, or an intent to mislead or deceive is not essential to invoke the equitable doctrine of estoppel. *Watkins v. Motor Lines*, 279 N.C. 132, 181 S.E. 2d 588 (1971). It is not necessary that there be misrepresentations of existing facts, as in fraud. If the debtor makes representations which mislead the creditor, who acts upon them in good faith, to the extent that he fails to commence his action in time, estoppel may arise. *Id.* The tolling of the statute may arise from the honest but entirely erroneous expression of opinion as to some significant legal fact. Equity will deny the right to assert the defense of the statute of limitations when delay has been induced by acts, representations, or conduct, the repudiation of which would amount to a breach of good faith. *Nowell v. Tea Co.*, 250 N.C. 575, 108 S.E. 2d 889.

Applying these principles to this appeal, we hold that the facts found are sufficient to support the conclusion that Stainback is estopped to plead the statute of limitations as a defense. The factual findings indicate a course of conduct by Stainback, through his attorney, which misled Duke. The actions and statements of Stainback's attorney caused Duke to reasonably believe that it would receive its payment for services rendered once the case between Stainback and Investors was concluded, and such belief reasonably caused Duke to foregoing pursuing its legal remedy against Stainback. The actions and statements of Stainback lulled Duke into a false sense of security. Defendant has breached the golden rule and fair play, justifying the entry of equity to prevent injustice. *McNeely v. Walters*, 211 N.C. 112, 189 S.E. 114.

The decision of the Court of Appeals is

Affirmed.

Justice MITCHELL dissenting.

I agree with the majority that the only question before us is whether the trial court's findings of fact support its conclusions of law. I would hold that they do not.

The trial court's findings merely indicate that the defendant Stainback, through his attorney Rogers, made Duke aware of the fact that he had brought an action against Investors and that, from time to time, he informed them of the status of that action. The findings are devoid of any statement by Stainback or Rogers expressing or implying an intent that any damages which might possibly be recovered in the suit against Investors would ever be paid in whole or in part to Duke.

I do not believe that the burden was upon Stainback to act affirmatively to notify Duke that he would not pay it out of any damages he recovered from Investors, in order to prevent the doctrine of equitable estoppel from being applied against him and in Duke's favor. Instead, it would be more reasonable to place the burden upon the functionaries of Duke's compensation and liability section to have asked Stainback or Rogers the simple question: "Do you plan to use any of the money you may recover to pay your bill with us?" The findings of the trial court did not reveal that any such question was ever asked of Stainback or of Rogers.

It seems to me that the trial court and the majority in this Court have concluded that, absent express notice by the defendant that he did not intend to pay Duke from any recovery he might receive in his suit against Investors, the defendant was equitably estopped from raising the statute of limitations as a defense in Duke's action against him. A comparison of the conclusions of the trial court, or the opinion of the majority here, with the trial court's findings simply supports no other view. Therefore, I must dissent.

I am not quite sure to what extent the majority applies the Golden Rule in this case. It occurs to me that, if the Golden Rule

were truly to be applied in the present case, Duke would be required to forgive the debt Stainback owed it for the treatment of his child, rather than seeking to invoke the doctrine of equitable estoppel against him where its own negligence caused it to fail to bring this action before the statute of limitations had run.

I respectfully dissent.

Justice WEBB joins in this dissenting opinion.