NO. COA14-53

NORTH CAROLINA COURT OF APPEALS

Filed:  2 September 2014

ROSE GLYNNE, M.D.,
    Plaintiff


    v.

Wilson County
No. 11 CVS 610

WILSON MEDICAL CENTER, a North
Carolina corporation,
    Defendant


Appeal by plaintiff from judgment entered 4 September 2013 by Judge Marvin K. Blount, III, in Wilson County Superior Court. Heard in the Court of Appeals 8 May 2014.


> *Medicolegal Consultants, LLC, by C. William Hinnant Jr., and McKinney Law Firm, PLLC, by Elizabeth McKinney, for Plaintiff.*
>
> *Womble Carlyle Sandridge & Rice, LLP, by John E. Pueschel and Theresa M. Sprain, for Defendant.*


ERVIN, Judge.


Plaintiff Rose L. Glynne, M.D., appeals from an order dismissing her complaint. On appeal, Plaintiff contends that the trial court erred by granting Defendant Wilson Medical Center's dismissal motion on the grounds that the time within which she was entitled to file her complaint had been extended by 28 U.S.C. § 1367(d) and that, even if her complaint had not been filed in a timely manner, she was still entitled to

equitable relief on the grounds of excusable neglect, equitable tolling, or equitable estoppel. After careful consideration of Plaintiff's challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be affirmed.

## I. Factual Background

### A. Substantive Facts

Plaintiff practiced medicine in Wilson, having opened her own practice in that community in 2002 after having been employed by another Wilson-based practice group before that time. As a result of the initial success that she experienced after having formed her own practice, Plaintiff employed an associate and purchased an office building. In October 2002, Plaintiff entered into an agreement to lease space in her office building to Defendant, which occupied and used the space from December 2005 until July 2006, when it vacated the premises. Plaintiff claimed that Defendant violated the lease agreement between the parties by failing to pay rent.

In April 2006, Defendant initiated an external quality review concerning Plaintiff based upon allegations that complications had been detected in surgical procedures that she performed in 2004 and 2005. However, the inquiry did not result in any adverse findings in reference to Plaintiff.

On 15 November 2006, Plaintiff attended a meeting of Defendant's medical executive committee at Defendant's request. At that meeting, Plaintiff was informed that problems involving the care that she provided to patients had been reported by several individuals. However, the nature of the problems that had been reported by these individuals was not explained to Plaintiff with any degree of precision. In addition, Defendant expressed concern that there was a high probability that surgical procedures performed by Plaintiff would result in complications. For that reason, Defendant believed that Plaintiff should repeat her residency or obtain a mentor. Although Plaintiff was unable to attend another committee meeting scheduled for the following day due to a medical emergency involving her daughter, she did notify a member of the committee of that fact. The person to whom Plaintiff communicated this information failed to inform the review committee of the necessity for Plaintiff's absence.

On 20 November 2006, Plaintiff's counsel notified Plaintiff that her privileges to admit and treat patients at Defendant's facility would be suspended 21 November 2006. On the following day, Plaintiff learned that Defendant insisted that she satisfy a number of requirements in order to obtain the restoration of her privileges, including taking a leave of absence, obtaining

the agreement of a qualified physician to serve as mentor, and having all of her proposed surgical cases reviewed by a board for a period of one year. Plaintiff took leave from practicing medicine from 21 November 2006 until 19 February 2007. During this interval, Plaintiff had to pay $50,000 in additional compensation to her associate in order to ensure that needed call coverage was provided. Although Plaintiff attempted to obtain the assistance of a mentor, Defendant declined to approve the proposed mentoring relationship on the grounds that the proposed mentor no longer practiced obstetrics. After rejecting Plaintiff's proposal, however, Defendant recommended that Plaintiff reach agreement with a different mentor, who had also ceased practicing obstetrics.

On 27 December 2006, Plaintiff received a letter from Defendant identifying the allegedly problematic procedures that had been discussed at the 15 November meeting. On 6 January 2007, Dr. Michael Halpert, Defendant's Chief of Surgery, was appointed to investigate the validity of the allegations that had been made against Plaintiff. On 8 February 2007, Dr. Halpert concluded that there was no evidence of an increased infection rate, other patient-related psychological or medical problems, or other instances of substandard care in the surgical procedures that Plaintiff had performed.

Although Plaintiff was allowed to resume treating patients and performing surgical procedures at Defendant's hospital on 19 February 2007, Defendant insisted that an external source review any questionable cases and that Plaintiff refrain from being on call for more than four consecutive days. As a result of the imposition of this limitation on her ability to be on call, Plaintiff had to continue to make additional payments to her associate in order to ensure the availability of the necessary call coverage.

On 20 December 2006, Plaintiff entered into an agreement with Parklane Venture Capitalists under which she was to sell her medical office building for a price of $1,000,000 while leasing a portion of the space in that building for the use of her medical practice. In the course of investigating the proposed purchase of Plaintiff's office building, however, Parklane learned that Defendant had ceased leasing space in Plaintiff's building. As a result, Parklane withdrew its offer to purchase Plaintiff's building, costing Plaintiff a substantial amount of money.

Although Plaintiff denied having experienced stress prior to the November 2006 meeting, she did experience emotional turmoil after that time and discussed her feelings with a family therapist and her colleagues. Despite the fact that Plaintiff

had regained her privileges at Defendant's hospital in February 2007, her enforced absence from practice coupled with the fact that rumors concerning her alleged patient care issues were circulating in the community resulted in substantial economic harm to her practice. On 15 November 2007, Plaintiff resigned her position as a member of the staff of Defendant's hospital, moved to Rocky Mount, and entered practice there. However, as the result of the financial loss that she sustained because of her temporary loss of privileges at Defendant's hospital and Defendant's refusal to honor the lease agreement, Plaintiff was required to seek personal bankruptcy protection and lost her office building.

## B. Procedural History

On 10 December 2008, Plaintiff filed a complaint in the United States District Court for the Eastern District of North Carolina in which she asserted numerous claims against Defendant arising under both federal and state law. After Plaintiff voluntarily dismissed her federal claims with prejudice on or about 30 April 2009, the District Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims and involuntarily dismissed the remainder of Plaintiff's complaint without prejudice on 1 March 2011.

On 7 April 2011, Plaintiff filed a complaint in this case in which she asserted claims for negligent infliction of emotional distress, tortious interference with contract, tortious interference with a prospective business relationship, breach of contract, and breach of the lease agreement against Defendant. On 13 May 2011, Defendant filed a motion to dismiss Plaintiff's complaint on the grounds that all of the claims that Plaintiff had asserted against Defendant were barred by the applicable statute of limitations.

On 26 May 2011, Plaintiff filed a motion seeking an extension of time to file a notice of appeal from the order dismissing Plaintiff's federal action or, alternatively, for relief from judgment, in the federal court action. On 4 August 2011, *nunc pro tunc* to 1 March 2011, the District Court entered an order allowing Plaintiff sixty days within which to reassert the dismissed state law claims in the General Court of Justice. Defendant noted an appeal from the District Court's order to the United States Court of Appeals for the Fourth Circuit on 8 August 2011. On 18 October 2012, the Fourth Circuit vacated the District Court's order. *Glynne v. WilMed HealthCare*, 699 F.3d 380 (2013). On 22 October 2012, Plaintiff filed a motion requesting the District Court to reconsider its refusal to exercise supplemental jurisdiction over Plaintiff's state law

claims.  The District Court denied Plaintiff's motion on 26 March 2013.

On 19 August 2013, the trial court conducted a hearing concerning the issues raised by Defendant's dismissal motion. On 4 September 2013, the trial court entered an order granting Defendant's dismissal motion and dismissing with prejudice all of the claims that Plaintiff had asserted against Defendant. Plaintiff noted an appeal to this Court from the trial court's order.

## II. Legal Analysis

### A. Standard of Review

"The standard of review of an order granting a [motion filed pursuant to N.C. Gen. Stat. § 1A-1, Rule] 12(b)(6) [] is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true." *Burgin v. Owen*, 181 N.C. App. 511, 512, 640 S.E.2d 427, 428 (citing *Country Club of Johnston County, Inc. v. U.S. Fidelity & Guar. Co.*, 150 N.C. App. 231, 238, 563 S.E.2d 269, 274 (2002), *disc. review dismissed*, 361 N.C. 425, 647 S.E.2d 98, *cert. denied*, 361 N.C. 690, 652 S.E.2d 257 (2007). On appeal from an order granting or denying a motion filed pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), we review the pleadings

*de novo* "'to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct.'" P*age v. Lexington Ins. Co.*, 177 N.C. App. 246, 248, 628 S.E.2d 427, 428 (2006) (quoting *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd*, 357 N.C. 567, 597 S.E.2d 673 (2003)). A complaint is properly subject to dismissal pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) when "'one of the following three conditions is satisfied: (1) the complaint . . . reveals that no law supports the plaintiff's claim; (2) the complaint . . . reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Burgin*, 181 N.C. App. at 512, 640 S.E.2d at 428-29 (quoting *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)). As a result, "[a] statute of limitations can be the basis for dismissal on a [motion made pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6)] if the face of the complaint discloses that plaintiff's claim is so barred." *Long v. Fink*, 80 N.C. App. 482, 484, 342 S.E.2d 557, 559 (1986).

### B. Expiration of the Limitations Period

In her first challenge to the trial court's judgment, Plaintiff contends that she filed her complaint in a timely manner and that the trial court erred by reaching a contrary

conclusion. According to Plaintiff, the provisions of 28 U.S.C. § 1367(d) operated to suspend the running of the statute of limitations during the pendency of her federal action rather than to extend it by thirty days following the dismissal of her federal action so that her complaint was, in fact, timely filed. Plaintiff is not entitled to relief from the trial court's order on the basis of this argument.

### 1. Relevant Legal Principles

A plaintiff seeking to recover damages or to obtain other relief for negligent infliction of emotional distress and tortious interference with contract or prospective business relations must assert that claim within three years of the date upon which the underlying injury occurred. *See* N.C. Gen. Stat. § 1-52(5). Similarly, claims for breach of contract and breach of a lease agreement must be asserted within three years of the date of the underlying breach. *See* N.C. Gen. Stat. § 1-52(1). According to 28 U.S.C. § 1367(d), "[t]he period of limitations for any [supplemental state law] claim asserted [in a federal action in accordance] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." As a result of the fact that North Carolina does not provide for a longer tolling period than the thirty day interval specified in 28

U.S.C. § 1367(d), *Harter v. Vernon*, 139 N.C. App. 85, 94, 532 S.E.2d 836, 842, *disc. review denied*, 353 N.C. 263, 546 S.E.2d 97 (2000), *cert. denied*, 532 U.S. 1022, 121 S. Ct. 1962, 149 L. Ed. 2d 757 (2001), this Court has interpreted 28 U.S.C. § 1367(d) to provide that, in the event that the statute of limitations applicable to a plaintiff's state law claim expires while a federal action in which that claim has been asserted is pending, the plaintiff has thirty days following the dismissal of the federal action to reassert his or her state law claims in the General Court of Justice. *Harter*, 139 N.C. App. at 91, 532 S.E.2d at 840; *Huang v. Ziko*, 132 N.C. App. 358, 362, 511 S.E.2d 305, 308 (1999).

## 2. Application of 28 U.S.C. § 1367(d)

As we have already noted, Plaintiff's negligent infliction of emotional distress, tortious interference with contract, tortious interference with prospective economic relations, breach of contract, and breach of a lease agreement claims are subject to three year statutes of limitations. Since Plaintiff's claims accrued no later than her resignation from Defendant's medical staff on 15 November 2007, she would, ordinarily, have been required to assert those claims against Defendant by no later than 15 November 2010. At that time, the action that she had filed against Defendant in federal court was

still pending. According to 28 U.S.C. § 1367(d), the statute of limitations applicable to Plaintiff's state law claims was tolled as long as the federal action remained pending. However, Plaintiff's federal action was involuntarily dismissed without prejudice on 1 March 2011. According to 28 U.S.C. § 1367(d) as interpreted in *Huang*, 132 N.C. App. at 362, 511 S.E.2d at 308 (holding that the state law claims for breach of contract and infliction of emotional distress that the plaintiff had asserted were time-barred given that the plaintiff had failed to reassert those claims in the General Court of Justice within thirty days after the dismissal of the plaintiff's federal action), and *Harter*, 139 N.C. App. at 91, 532 S.E.2d at 840 (holding that, since the statute of limitations applicable to the plaintiff's state law claims had expired while the plaintiff's federal action was pending, the plaintiff's state law claims were time-barred since she reasserted them in the General Court of Justice more than thirty days following the dismissal of her federal action), Plaintiff had 30 days from the date upon which the federal action was dismissed to file her supplemental state law claims in the General Court of Justice. In light of that fact, Plaintiff was entitled to reassert her state law claims in the General Court of Justice on or before 31 March 2011. However, the complaint in this case was not filed until 7 April 2011. As

a result, given the absence of a valid District Court order allowing Plaintiff to file her complaint in the General Court of Justice more than thirty days after the dismissal of her federal action,[1] the trial court correctly concluded that Plaintiff's complaint was subject to dismissal on statute of limitations grounds.

In seeking to persuade us to reach a different result, Plaintiff contends that the word "tolling" as used in 28 U.S.C. § 1367(d) should be understood to involve the suspension of the running of the limitations period rather than the extension of that period by a specified number of days.  In support of her interpretation of the relevant statutory language, Plaintiff directs our attention to federal decisions and decisions from other states that use the word "tolling" in what she believes to be the correct sense.  *See, e.g., Chardon v. Fumero Soto*, 462 U.S. 650, 652 n.1, 103 S. Ct. 2611, 2613 n.1, 77 L. Ed. 2d 74, 78 n.1 (1983) (stating that "the word 'tolling' [means] that, during the relevant period, the statute of limitations ceases to run"); *Heard v. Sheahan*, 253 F.3d 316, 317 (7th Cir. 2001) (stating that  "[t]olling interrupts the statute of limitations

---

[1]The extent to which the District Court would have had the authority to grant such an extension is in dispute between the parties.  However, since no such extension was ever granted, we need not resolve that part of the parties' dispute in this opinion.

after it has begun to run"); *Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1195 n.8 (10th Cir. 1998) (stating that "the term 'tolling' means to suspend or stop temporarily") (citations and quotation marks omitted); *Bonifield v. County of Nevada*, 94 Cal. App. 4th 298, 303, 114 Cal. Rptr. 2d 207, 211 (2001) (stating that "[t]o toll the statute of limitations period means to suspend the period"), *review denied*, 2002 Cal. Lexis 1591 (2002). In addition, Plaintiff argues that the extension approach is clearly inconsistent with Congressional intent given that, under this approach, 28 U.S.C. § 1367(d) would only apply in the event that the statute of limitations applicable to the plaintiff's state law claims had expired during the pendency of the federal action in which those claims had been asserted despite the fact that the relevant statutory language provides that the applicable statute of limitations "shall" be tolled during the pendency of the federal action. *United States v. Monsanto*, 491 U.S. 600, 607, 109 S. Ct. 2657, 2662, 105 L. Ed. 2d. 512, 521 (1989) (stating that the use of the word "shall" means that the statute was intended to be "mandatory in cases where the statute applie[s]"); *In re Vertrue Inc. Mktg. & Sales Practices Litig.*, 719 F.3d 474, 481 (6th Cir. 2013) (stating that "the extension approach fails to give any operative effect to [28 U.S.C.] § 1367(d) in a number of cases in which the state

statute of limitations does not expire during the course of federal litigation"). Finally, Plaintiff points to the statutory reference to tolling the "period of limitations" and argues that the presence of that expression, rather than a reference to a tolling of the "expiration of the limitations period," suggests the appropriateness of interpreting 28 U.S.C. § 1367(d) so as to suspend the running of the applicable statute of limitations rather than to extend it. As a result, Plaintiff contends that, rather than simply having thirty days after the dismissal of her federal action within which to file her complaint in this case, she had an amount of time consisting of the difference between the three year period of limitations applicable to the claims that she wished to assert against Defendant and the amount of the applicable limitations period that had not expired as of the date upon which she filed her federal action.

The fundamental problem with Plaintiff's argument is that this Court has already considered and rejected it and our decisions to that effect have not been overturned by or demonstrated to be inconsistent with a decision by either the United States Supreme Court or the Supreme Court of North Carolina. According to well-established North Carolina law, "[w]here a panel of the Court of Appeals has decided the same

issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In re Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). In other words, even if "a panel of the Court of Appeals . . . disagree[s] with, or even find[s] error in, an opinion by a prior panel . . . [,] the panel is bound by that prior decision until it is overturned by a higher court." *State v. Jones*, 358 N.C. 473, 487, 598 S.E.2d 125, 134 (2004). As a result, given that we, like the trial court, are bound by this Court's decisions in *Harter* and *Huang*, we have no hesitation in concluding that the trial court did not err by dismissing Plaintiff's complaint with prejudice on statute of limitations grounds.

## C. Equitable Arguments[2]

### 1. Excusable Neglect

In her second challenge to the trial court's order, Plaintiff contends that she should be allowed to assert her state law claims in this case on excusable neglect grounds despite the fact that they are time-barred. More specifically, Plaintiff contends that, in view of the fact that she relied on

[2]In its brief, Defendant contends that Plaintiff failed to properly preserve her equitable challenges to the trial court's order for purposes of appellate review. However, we need not resolve this issue given our determination that none of Plaintiff's equitable arguments have merit.

an interpretation of 28 U.S.C. § 1367(d) that had been accepted in many other jurisdictions, the fact that she filed her complaint in this case only slightly beyond the period allowed under the "extension" interpretation of 28 U.S.C. § 1367(d), and the fact that there is a "total lack of prejudice to" Defendant, she should be allowed to litigate the state law claims that she has asserted in this case despite the running of the applicable statute of limitations. We do not find Plaintiff's argument persuasive.[3]

The only potentially applicable legal basis for holding that a trial or appellate court has the authority to extend the applicable statute of limitations for "excusable neglect" is N.C. Gen. Stat. § 1A-1, Rule 6(b), which provides that, "[w]hen by these rules . . . an act is required or allowed to be done at or within a specified time . . . [, u]pon motion made after the expiration of the specified period, the judge may permit the act to be done where the failure to act was the result of excusable neglect." As the Supreme Court has stated, N.C. Gen. Stat. § 1A-1, Rule 6(b) provides "trial courts [with] broad authority to extend any time period specified in any of the Rules of Civil

---

[3]Plaintiff appears to have abandoned this "excusable neglect" argument in her reply brief. However, given that the extent to which she has abandoned this claim is not entirely clear to us, we have elected to address and resolve it on the merits.

Procedure for the doing of any act, after expiration of such specified time, upon finding of 'excusable neglect.'" *Lemons v. Old Hickory Council*, 322 N.C. 271, 276, 367 S.E.2d 655, 658 (1998). Any argument that Plaintiff may seek to make pursuant to N.C. Gen. Stat. § 1A-1, Rule 6(b), necessarily fails, however.

As an initial matter, the only time periods that may be extended based upon the authority available pursuant to N.C. Gen. Stat. § 1A-1, Rule 6(b), are those established by the North Carolina Rules of Civil Procedure. *Chicora Country Club, Inc. v. Town of Erwin*, 128 N.C. App. 101, 108, 493 S.E.2d 797, 801 (1997) (stating that "our courts have consistently held that a trial court's authority to extend the time specified for doing a particular act [pursuant to N.C. Gen. Stat. § 1A-1, Rule 6(b)] is limited to the computation of [those] time period[s] prescribed by the Rules of Civil Procedure") (quotations and citations omitted), *disc. review denied*, 347 N.C. 670, 500 S.E.2d 84 (1998). As should be obvious, the statutes of limitation at issue here do not appear in the North Carolina Rules of Civil Procedure. In addition, the Supreme Court has clearly held that "carelessness or negligence or ignorance of the rules of procedure . . . does not constitute 'excusable neglect.'" *Briley v. Farabow*, 348 N.C. 537, 546, 501 S.E.2d

649, 655 (1998) (citing *In re Wright*, 247 F.Supp. 648, 659 (E.D. Mo. 1965)).  In light of that principle, we are unable to hold that Plaintiff's lack of familiarity with the interpretation of the tolling provision of 28 U.S.C. § 1367(d) adopted in *Harter* and *Huang* simply cannot be deemed to constitute excusable neglect.  As a result, given that the only authority that Plaintiff has cited in support of her contention that trial courts have the authority to overlook the applicable statute of limitations on "excusable neglect" grounds has no application to statutes of limitations and that Plaintiff's failure to recognize and follow the interpretation of 28 U.S.C. § 1367(d) adopted in *Harter* and *Huang* does not constitute "excusable neglect," Plaintiff is not entitled to relief from the trial court's order on the basis of "excusable neglect."

## 2. Equitable Tolling or Equitable Estoppel

Finally, Plaintiff contends that the running of the applicable statutes of limitation should be deemed to have been tolled on equitable tolling or equitable estoppel[4] grounds.  In

---

[4]In her brief, Plaintiff relies on both equitable estoppel and equitable tolling considerations.  Although the two terms have different dictionary definitions, *Black's Law Dictionary* 579, 590 (8th ed. 2004), this Court and the Supreme Court have used the two terms interchangeably in the statute of limitations context, *See, e.g., Duke University v. Stainback*, 320 N.C. 337, 341, 357 S.E.2d 690, 692-93, (1987) (discussing "[t]he tolling of the statute" because of "equity" and the "equitable doctrine

support of this contention, Plaintiff contends that Defendant should be equitably estopped from asserting that the state law claims that she sought to assert against Defendant in this case were time-barred on the grounds that, prior to the filing of her complaint in this case, Defendant had intimated to Plaintiff that he intended to depose Plaintiff again. Once again, we conclude that Plaintiff's argument lacks merit.[5]

"Equitable estoppel may be invoked, in a proper case, to bar a defendant from relying upon the statute of limitations." *Stainback*, 320 N.C. at 341, 357 S.E.2d at 692. "Equitable estoppel arises when a party has been induced by another's acts to believe that certain facts exist, and that party rightfully relies and acts on that belief to his [or her] detriment." *Ussery v. Branch Banking and Trust Co.*, __ N.C. App. __, __, 743

---

of estoppel"), so we will treat them as interchangeable in the body of this opinion.

[5]In addition to the argument discussed in the text, Plaintiff appears to contend that we should simply refuse to enforce the applicable statutes of limitation and the interpretation of 28 U.S.C. § 1367(d) deemed appropriate in *Harter* and *Huang* because it would be inequitable to preclude Plaintiff from asserting the claims at issue in this case because she filed her complaint approximately one week late. However, Plaintiff has cited no authority in support of her implicit assertion that we have the power to act in this manner and we know of none. *See Aikens v. Ingram*, 524 F. App. 873, 879-82 (4th Cir. 2013) (holding that there is no controlling North Carolina authority upholding the use of any sort of equitable tolling of the applicable statute of limitations in the absence of detrimental reliance).

S.E.2d 650, 654 (2013) (citation and quotation marks omitted). In other words, a defendant "may be equitably estopped from using a statute of limitations as a sword, so as to unjustly benefit from his own conduct which induced a plaintiff to delay filing suit." *Friedland v. Gales*, 131 N.C. App 802, 806, 509 S.E.2d 793, 796 (1998).

According to Plaintiff, Defendant should be equitably estopped from asserting the running of the applicable statute of limitations against her given that Defendant's counsel stated that he "likely would want to depose Appellant (for a fourth time)" in the event that Plaintiff reasserted her claims in the General Court of Justice following the dismissal of her federal court action. At most, however, this statement simply meant that, in the event that Plaintiff reasserted her claims against Defendant in the General Court of Justice, Defendant would seek to depose Plaintiff again. Unlike the statement at issue in *Ussery*, __ N.C. App. at __, 743 S.E.2d at 656, in which the defendant told the plaintiff to "hold off on instituting any action" on the theory that "everything would be worked out," the statement at issue here would not have had any tendency to induce Plaintiff to refrain from filing her complaint in a timely manner. As a result, the trial court did not err by failing to hold that Defendant was equitably estopped from

asserting the statute of limitations in opposition to the claims that Plaintiff sought to assert in this case.

### III. Conclusion

Thus, for the reasons set forth above, we conclude that none of Plaintiff's challenges to the trial court's judgment have merit. As a result, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Judge GEER concurs in separate opinion.

Judge ROBERT N. HUNTER, JR. concurs in result only in separate opinion.

NO. COA14-53

NORTH CAROLINA COURT OF APPEALS

Filed: 2 September 2014

ROSE GLYNNE, M.D.,
      Plaintiff,

v.                                    Wilson County
                                      No. 11 CVS 610
WILSON MEDICAL CENTER, a North
Carolina Corporation,
      Defendant.


      GEER, Judge concurring.


      I concur fully with the majority opinion -- we are bound by *Harter v. Vernon*, 139 N.C. App. 85, 532 S.E.2d 836, *disc. review denied*, 353 N.C. 263, 546 S.E.2d 97 (2000), *cert. denied*, 532 U.S. 1022, 149 L. Ed. 2d 757, 121 S. Ct. 1962 (2001), and *Huang v. Ziko*, 132 N.C. App. 358, 511 S.E.2d 305 (1999). While the result is especially unfortunate given that plaintiff bears no responsibility for the belated filing and given that the complaint barely missed the 30-day deadline, the law has been clearly established in North Carolina for 15 years.

      As the California Supreme Court noted a month ago in *City of Los Angeles v. County of Kern*, 59 Cal. 4th 618, 627, 174 Cal. Rptr. 3d 67, 73, 328 P.3d 56, 61 (2014), "[r]easonable jurists can and do differ over the best understanding of [28 U.S.C. §

1367(d)], one whose text lacks an indisputable plain meaning." Because of the profound split in authority that has developed regarding the proper construction of § 1367(d) and the consequences to parties who misinterpret the statute, it is regrettable that neither the United States Supreme Court nor the North Carolina Supreme Court has seen fit to address this issue. Perhaps the *City of Los Angeles* opinion will prompt the United States Supreme Court to take up the issue and, if not, perhaps our Supreme Court will do so, as urged by Judge Hunter's concurring opinion.

NO. COA14-53

NORTH CAROLINA COURT OF APPEALS

Filed: 2 September 2014

ROSE GLYNNE, M.D.,
 Plaintiff,

  v.

WILSON MEDICAL CENTER, a North
Carolina Corporation,
 Defendant.

              Wilson County
              No. 11-CVS-610

    HUNTER, JR., Robert N., Judge, concurring.

    I concur with the majority in the result. This panel is bound by this Court's decisions *Harter* and *Huang* and therefore must affirm the trial court's dismissal of Plaintiff's complaint on statute of limitations grounds. However, I write separately because I agree with Plaintiff that our interpretation of 28 U.S.C. § 1367(d) in *Harter* and *Huang* are in conflict with recent persuasive federal authority and authority from other states interpreting the meaning of "tolling," both as a general matter and as used specifically in 28 U.S.C. § 1367(d). For example, since our decisions in *Harter* and *Huang*, the Sixth Circuit Court of Appeals has addressed this issue directly and held that 28 U.S.C. § 1367(d) suspends the running of the statute of limitations period while the federal court is considering the

claim and for thirty days after the claim is dismissed. *In re Vertrue Inc. Mktg. & Sales Practices Litig.*, 719 F.3d 474, 481 (6th Cir. 2013) ("We are persuaded that the suspension approach properly gives effect to both § 1367(d) and the state statute of limitations."). Given the importance of this question and our state's conflict with the only federal circuit court that has considered this issue, I would urge the Supreme Court of North Carolina to review this question and resolve the conflict between this persuasive federal precedent and our state's case law.