Brown v. TM Northlake Mall, LP, 2025 NCBC 57.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
MASTER FILE 24CV032386-590

BIANCA JULIANNE BROWN,

        Plaintiff,

v.

TM NORTHLAKE MALL, LP et al.,

        Defendants.

**ORDER AND OPINION
ON MOTION TO DISMISS**

THE ESTATE OF ARMANI
DONOVICK SPENCER, by and
through its Administratrix DONNA
KAY SPENCER,

        Plaintiff,

v.

TM NORTHLAKE MALL, LP et al.,

        Defendants.

24CV032393-590
RELATED CASE

BRIANNA PERKINS,

        Plaintiff,

v.

TM NORTHLAKE MALL, LP et al.,

        Defendants.

25CV036624-590
RELATED CASE

1. These consolidated cases arise from a shooting that killed Armani Spencer and injured two others. All three victims assert claims against the owners, managers, and security personnel of the shopping centers where the shooting occurred, alleging

that they had a duty to provide adequate security but negligently failed to do so. Defendants AMMS, Inc., Amy Ruth Tompkins, and Michael McLaughlin contend that the wrongful death claims asserted by Spencer's estate are untimely and have moved to dismiss them under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. For the following reasons, the Court **GRANTS** the motion.

*Howard, Stallings, From, Atkins, Angell & Davis, P.A., by Robert Jessup and Matthew Langston, and Ramsay Law Firm, by Brian Curtis Hunt, for Plaintiffs Bianca Julianne Brown, Brianna Perkins, and The Estate of Armani Donovick Spencer.*

*Teague Campbell Dennis & Gorham, LLP, by John Matthew Little and Daniel Thaddeus Perry, for Defendant Hiffman Asset Management, LLC d/b/a Hiffman National.*

*Gallivan, White, & Boyd, P.A., by Christopher Mark Kelly, for Defendant S&S Management Group, LLC d/b/a Security Solutions of America.*

*Goldberg Segalla LLP, by John I. Malone, for Defendant ARC NCCHRNC001, LLC.*

*Wilson Elser Moskowitz Edelman & Dicker, LLP, by Jamie L. Winokur and Spencer Hoisington, for Defendants Spinoso Real Estate Group, DLS, LLC and TM Northlake Mall, LP.*

*Hall Booth Smith, P.C., by Peter F. O'Connell and Charles J. Taylor, for Defendant Professional Security Consultants, Inc.*

*McAngus Goudelock & Courie, PLLC, by David M. Fothergill and Megan Reilly-Dreas, for Defendants AMMS, Inc., Amy Ruth Tompkins, and Michael McLaughlin.*

Conrad, Judge.

# I.
# BACKGROUND

2. The Court does not make findings of fact on a Rule 12(b)(6) motion. The following background assumes that the allegations made by Spencer's estate are true. (*See* Am. Compl., ECF No. 72.)

3. In August 2022, Bianca Brown, Brianna Perkins, and Armani Spencer gathered at a restaurant in the Northlake Commons shopping center in Charlotte, North Carolina. Shortly after midnight, they left the restaurant and were driving away when "a reckless driver tailgat[ed] them from Northlake Commons into Northlake Mall." At a stoplight on mall grounds, the tailgater pulled even with their vehicle, fired about twenty gunshots, and then fled. Spencer died at the scene; Brown and Perkins were severely injured. The shooter's identity remains unknown. (Am. Compl. ¶¶ 31–34.)

4. Brown and Spencer's estate brought their lawsuits in July 2024, and Perkins's lawsuit followed about a year later. All three have been consolidated for discovery. In a nutshell, Brown, Perkins, and Spencer's estate blame their injuries on the owners, managers, and security providers of Northlake Commons and Northlake Mall. As alleged, authorities for both properties were aware of the area's history of criminal activity and therefore had a duty to safeguard their customers, but they negligently breached that duty by failing to warn the public of the danger and failing to provide adequate security. (*See, e.g.*, Am. Compl. ¶¶ 62, 63.)

5. Only the claims against AMMS, Tompkins, and McLaughlin are at issue. They are relative newcomers to the litigation, having not been named as defendants

at the outset. It was during discovery that Brown and Spencer's estate first learned of their existence and role in providing (or failing to provide) security for Northlake Commons. Brown and Spencer's estate obtained leave to amend their complaints and assert claims against AMMS, Tompkins, and McLaughlin in June 2025, around the same time that Perkins filed her complaint. (*See, e.g.*, Am. Compl. ¶¶ 55, 56.)

6. As alleged, AMMS is a North Carolina company owned by Tompkins and McLaughlin. Northlake Commons' property manager, Hiffman, retained AMMS to provide security services at the shopping center. Without informing Hiffman, AMMS then subcontracted its duties to an outfit called Security Solutions. Although AMMS performed no security services itself, is not licensed to do so, and has no employees, Tompkins prepared and sent Hiffman phony invoices as if AMMS had provided full-service security. Meanwhile, Security Solutions was led to believe that AMMS, not Hiffman, was Northlake Commons' manager. It is alleged that McLaughlin often meddled in the deployment of Security Solutions' guards, instructing them to leave Northlake Commons and go to "unrelated commercial properties where AMMS had operations." And AMMS allegedly directed Security Solutions not to create "daily written incident reports," contrary to industry standards. The amended complaint asserts a wrongful death claim against AMMS, Tompkins, and McLaughlin based on allegations that they failed to perform their duties and negligently failed to exercise ordinary care in protecting the shopping center's patrons. (*See, e.g.*, Am. Compl. ¶¶ 39–57, 115.)

7.     AMMS, Tompkins, and McLaughlin have answered Brown's and Perkins's complaints and denied any wrongdoing.   Separately, AMMS, Tompkins, and McLaughlin have moved to dismiss the claims asserted by Spencer's estate, arguing that the claims are untimely.  (*See* ECF No. 104.)  After full briefing and a hearing on 22 September 2025, the motion is ripe for decision.

II.
ANALYSIS

8.     AMMS, Tompkins, and McLaughlin assume, for the purpose of this motion, that Spencer's estate has adequately alleged the elements of a wrongful death claim. Even so, they contend, the claim must be dismissed because it is untimely.  Indeed, everyone agrees that the two-year limitations period expired long before Spencer's estate sued AMMS, Tompkins, and McLaughlin.  *See* N.C.G.S. § 1-53(4) (stating that a wrongful death claim accrues on "the date of death" and must be brought "[w]ithin two years").  The dispute is instead over whether AMMS, Tompkins, and McLaughlin are equitably estopped from asserting the statute of limitations as a defense.

9.     A statute of limitations "may be the basis of a 12(b)(6) dismissal if on its face the complaint reveals the claim is barred." *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus., Inc.*, 336 N.C. 438, 442 (1994).  In deciding the motion, the Court must treat all well-pleaded allegations as true and view the facts and permissible inferences in the light most favorable to the nonmoving party. *See, e.g., Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019).  Material outside the pleading may not be considered. *See Jackson/Hill Aviation, Inc. v. Town of Ocean Isle Beach*, 251 N.C. App. 771, 775 (2017).

10.    "Equitable estoppel may be invoked, in a proper case, to bar a defendant from relying upon the statute of limitations." *Duke Univ. v. Stainback*, 320 N.C. 337, 341 (1987).  The doctrine is rooted in notions of "fair play."  *Id.* (quoting *McNeely v. Walters*, 211 N.C. 112, 113 (1937)).  A defendant who induces a plaintiff to delay filing suit should not be able to turn around and assert a statute of limitations as a defense to avoid suit altogether.  *See, e.g.*, *Nowell v. Great Atl. & Pac. Tea Co.*, 250 N.C. 575, 579 (1959); *see also Jordan v. Crew*, 125 N.C. App. 712, 720 (1997) ("In order for equitable estoppel to bar application of the statute of limitations, a plaintiff must have been induced to delay filing of the action by the misrepresentations of the defendant.").

11.    Estoppel has three "essential elements": "(1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts." *Friedland v. Gales*, 131 N.C. App. 802, 807 (1998) (citation and quotation marks omitted).  In addition, the party advocating estoppel "must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice."  *Id.* (citation and quotation marks omitted).  "[T]he conduct of both parties must be weighed in the balances of equity and the party claiming the estoppel no less than the party sought to be estopped must conform to fixed standards of equity."  *Gaston–Lincoln Transit, Inc. v. Maryland Casualty Co.*, 285 N.C. 541, 549 (1974).

12. AMMS, Tompkins, and McLaughlin argue that they did not induce Spencer's estate to delay filing suit. The complaint, they say, does not allege that they ever had any contact with Spencer's estate or its lawyers, much less that they made misrepresentations to the estate. In their view, any delay in filing suit resulted from the estate's lack of diligence.

13. In response, Spencer's estate maintains that estoppel may apply when a wrongdoer conceals his identity, even without making a direct misrepresentation to the aggrieved party. Here, the estate contends, AMMS, Tompkins, and McLaughlin concealed their role in Northlake Commons' security. According to the estate, the complaint adequately alleges that the actions of AMMS, Tompkins, and McLaughlin kept the estate from identifying them and, thus, induced the delay in filing suit.

14. Our Court of Appeals has held that "one who actively, affirmatively and deliberately conceals his identity as a tortfeasor is equitably estopped from asserting the statute of limitations as a defense to an action for damages resulting from his tortious act." *Friedland*, 131 N.C. App. at 805. In *Friedland*, the defendant had killed an individual and then lied to police officers about his involvement, which "prevented plaintiff from learning his identity before the statute of limitations had run." *Id.* at 809. The defendant, having concealed his identity from the police and the public, was "equitably estopped from asserting the statute of limitations as a bar to plaintiff's claim." *Id.*

15. In this case, by contrast, the amended complaint's allegations do not show that AMMS, Tompkins, and McLaughlin concealed their identities. Both Hiffman

and Security Solutions were undeniably aware of their identities and their involvement in Northlake Commons' security.  Hiffman engaged them to provide security services for the shopping center, and Security Solutions performed security services under their direction.  At no point does the amended complaint allege that AMMS, Tompkins, and McLaughlin denied having a role in Northlake Commons' security or lied about their involvement to police or other authorities during the investigation of Spencer's death.  *See Loray Master Tenant, LLC v. Foss N.C. Mill Credit 2014 Fund I, LLC*, 2021 NCBC LEXIS 15, at *23 (N.C. Super. Ct. Feb. 18, 2021) (granting motion to dismiss and concluding that plaintiff's lack of awareness of defendant's identity did not support estoppel absent concealment).

16.    The estate points to allegations that AMMS, Tompkins, and McLaughlin shirked their security responsibilities and misled Hiffman and Security Solutions in certain ways.  Specifically, it is alleged that AMMS led Hiffman to believe that AMMS was providing full-service security and sent phony invoices, held itself out to Security Solutions as the property manager, and directed Security Solutions to send guards to other properties and not to compile written incident reports.  (*See* Am. Compl. ¶¶ 39, 41, 47, 48.)    Even if true, these allegations show that AMMS, Tompkins, and McLaughlin held themselves out as having *greater* responsibility for Northlake Commons' security than they really had, not that they concealed their identities. Moreover, the allegations that they failed to perform their duties may suggest negligence (or worse) but do not support estoppel absent deliberate concealment of their identities.  *See Harrington v. Gerald*, 2008 N.C. App. LEXIS 635, at *10 (N.C.

Ct. App. 2008) (unpublished) ("The fact that Plaintiffs did not discover until 2006 that Defendant had received possession of the boat slips is irrelevant to an equitable estoppel analysis without such deliberate actions [of concealment] by Defendant.").

17.   The amended complaint also contains a few conclusory allegations of concealment.  But it is well settled that courts need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Izydore v. Alade*, 242 N.C. App. 434, 438 (2015) (citation and quotation marks omitted).

18.   In sum, the amended complaint's allegations, even if true, do not support the application of equitable estoppel.  As noted, it is undisputed that the statute of limitations expired long before the estate sued AMMS, Tompkins, and McLaughlin. The wrongful death claim is therefore untimely.

### III.
### CONCLUSION

19.   For these reasons, the Court **GRANTS** the motion to dismiss and **DISMISSES** with prejudice all claims asserted by Spencer's estate against AMMS, Tompkins, and McLaughlin.


     **SO ORDERED**, this the 29th day of September, 2025.


                         /s/ Adam M. Conrad
                         Adam M. Conrad
                         Special Superior Court Judge
                          for Complex Business Cases