**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

CIPERCEN, LLC, a Texas limited liability )
Company, et al. )
                                     )
     Plaintiffs/Counterclaim Defendants, )
                                     )
            v. )          C.A. No. N19C-12-074 EMD CCLD
                                       )
MORNINGSIDE TEXAS HOLDINGS, )
LLC, a Delaware limited liability )
Company, et al., )
                                     )
     Defendants/Counterclaim Plaintiffs )
―――――――――――――――――――)
CIPERCEN, LLC, a Texas limited liability )
Company, et al. )
                                     )
     Third-Party Plaintiffs, )
                                     )
            v. )
                                       )
MEINEKE FRANCHISOR SPV, LLC, a )
Delaware limited liability company, )
                                     )
     Third-Party Defendant, )
―――――――――――――――――――)
MEINEKE FRANCHISOR SPV, LLC, a )
Delaware limited liability company, )
                                     )
     Third-Party Defendant/ )
     Counterclaim Plaintiff )
                                     )
            v. )
                                       )
CIPERCEN, LLC, a Texas limited liability )
Company, et al. )
                                     )
     Third-Party Plaintiffs/ˆ )
     Counterclaim-Defendants. )

Submitted: June 22, 2022
Decided: September 14, 2022

*Upon Third-Party Plaintiffs/Counterclaim Defendants Cipercen, LLC's Motion to Dismiss Third-Party Defendant Meineke Franchisor SPV, LLC's Counterclaim*
**GRANTED**

*Upon Third-Party Defendant/Counterclaim Plaintiff Meineke Franchisor SPV, LLC's Motion to Dismiss Third-Party Complaint*
**GRANTED**

Timothy J. Houseal, Esquire, Jennifer M. Kinkus, Esquire, Young Conaway Stargatt & Taylor LLP, Wilmington, Delaware, Matthew K. Wegner, Esquire, Brown Wegner LLP, Irvine, California. *Attorneys for Plaintiffs/Third-Party Plaintiffs Cipercen LLC et al.*

Patricia R. Urban., Esquire, Megan Ix Brison, Esquire, Pinckney Weidinger Urban & Joyce, Wilmington, Delaware, Jeffrey Hurt, Esquire, Hurt & Berry, LLP, Dallas, Texas. *Attorneys for Defendant/Counterclaim Plaintiff Morningside Texas Holdings, LLC*

Francis G.X. Pileggi, Esquire, Cheneise V. Wright, Esquire., Lewis Brisbois Bisgaard & Smith LLP, Wilmington, Delaware, Dennis D. Leone, Esquire, Sunjay D. Trehan, Esquire, Shankman Leone, P.A., Tampa, Florida. *Attorneys for Third-Party Defendant Meineke Franchisor SPV, LLC*


**DAVIS, J.**

## I.    INTRODUCTION

Counterclaim Defendants Cipercen, LLC, Cpercen-4241, LLC, Cipercen-2064, Cipercen-4169, LLC, Cipercen-2478, LLC, Cipercen-1460, LLC, Cipercen-2316, LLC, and Cipercen-4156, LLC (together, "Cipercen") collectively owned and operated several franchises of Meineke Car Care Center though franchise agreements with the Meineke Defendants.[1]  By 2017, Cipercen owed substantial amounts to Meineke Franchisor SPV, LLC ("Meineke") (through unpaid franchise fees) and the IRS (through a tax lien on the franchises).  Cipercen decided to sell the franchises.  Cipercen claims that Meineke offered to waive the unpaid franchise fees if Cipercen sold the franchises to Meineke's preferred buyer: Morningside Texas Holdings, LLC

---

[1] The Third-Party Defendants are Meineke Car Centers, LLC; Driven Brands Shared Services, LLC; Driven Brands, Inc.; Meineke Franchisor SPV, LLC.  The parties commonly refer to these entities as the "Meineke Defendants." Meineke SPV, LLC is also a counterclaim plaintiff, asserting claims against Cipercen.

2

("Morningside"). Cipercen and Morningside entered into an Asset Purchase Agreement (the "APA"). Cipercen also transferred control of the franchises to Morningside. When the APA failed to close, Cipercen and Morningside filed a variety of tort and contract claims against each other.

Cipercen also filed a Third-Party Complaint against the Meineke Defendants, alleging Meineke fraudulently induced Cipercen to enter into the APA with Morningside. Meineke counterclaimed, alleging Cipercen remains obligated to pay it the Outstanding Franchise Fees. The Meineke Defendants moved to dismiss the Third-Party Complaint (the "Meineke Motion"). In addition, Cipercen moved to dismiss Meineke's Counterclaim (the "Cipercen Motion").

For the reasons explained below, the Meineke Motion to Dismiss is **GRANTED**; and the Cipercen Motion to Dismiss is **GRANTED** as well.

## II.     FACTUAL BACKGROUND[2]

Cipercen owned and operated nine Meineke Car Care Center franchises in Texas under nine individual Franchise Agreements with the Meineke Defendants.[3] In mid to late 2017, Cipercen became interested in selling seven of the franchises (the "Meineke Centers").[4] At the time, Cipercen owed approximately $550,000 in unpaid franchise fees to Meineke (the "Outstanding Franchise Fees") and $600,000 to the IRS (the "IRS Lien").[5]

Jeff Todd is Driven Brands, Inc.'s Vice President of Franchise Development.[6] The Third-Party Complaint alleges Mr. Todd acts as an agent of Meineke to facilitate the resale of Meineke Car Care Centers for the Meineke Defendants and their franchisees.[7] In late 2017, Mr.

---

[2] The facts are taken from the Third-Party Complaint and the Counterclaim.
[3] *See* Third-Party Compl. at ¶¶ 24–30.
[4] *Id.* at ¶ 31.
[5] *Id.*
[6] *Id.* at ¶ 38.
[7] *Id.*

3

Todd was looking for potential purchasers of the Meineke Centers.[8] By September 2017, Mr. Todd allegedly knew that Cipercen had already received various offers for the Meineke Centers.[9] Mr. Todd asked Cipercen to defer accepting those offers while Mr. Todd solicited an offer from Morningside.[10] In October 2017, Morningside emailed Mr. Todd a Letter of Intent (the "LOI") to purchase the Meineke Centers.[11] Mr. Todd forwarded the LOI to Cipercen.[12] Morningside offered to purchase seven Meineke Centers for $600,000, the amount due under the IRS Lien.[13]

Cipercen did not regard Morningside's offer as enticing because (i) Cipercen "still owed the Outstanding Franchise Fees" to Meineke and (ii) Cipercen was already considering earlier offers by others for several of the Meineke Centers that Morningside offered to buy.[14] The Third-Party Complaint alleges that Mr. Todd emailed Cipercen on October 18, 2017 and "represented that Meineke Defendants would write off the Outstanding Franchise Fees if Cipercen agreed to sell the Meineke Centers to Morningside."[15] Although the Third-Party Complaint neither quotes the email nor attaches it as an exhibit, Meineke submitted the email as an exhibit to its Motion. The email said, in its entirety:

> In addition to the offer submitted by the investor group [*i.e.*, Morningside]. Meineke acknowledges that it will write off the AR is owed to us, given the following facts:
>
> - Proceeds from the $600k offer are used to satisfy the IRS Lien
> - Funds in excess of the IRS lien are paid directly to the Meineke
> - The current balance owed by the centers is the following $791,730.21
> - The centers must remain current until deal close[16]

---

[8] *Id.* at ¶ 39.
[9] *Id.* at ¶ 40.
[10] *Id.*
[11] *Id.* at ¶ 41.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.* at ¶ 42.
[16] Meineke's Mot. to Dismiss Third-Party Compl., Ex. A (D.I. 46).

Cipercen signed the LOI on October 19, 2017.[17] On December 21, 2017, Cipercen signed seven Mutual Releases with the Meineke Defendants to terminate the Franchise Agreements for each of the Meineke Centers to be sold to Morningside (the "Releases").[18] Under each Release, Cipercen agreed to release Meineke:

> from any and all rights, duties, responsibilities, claims or causes of action whatsoever, whether in contract or in tort, existing by common law or by statute, known or unknown, heretofore existing between Meineke and [Cipercen] which may have accrued or which may accrue on account of, arising from, or in any manner growing out of or resulting from the franchise relationship and the Agreement governing that relationship.[19]

Meineke also agreed to release its claims against Cipercen, subject to certain conditions:

> Subject to the renewal, extension or closing of the sale of the franchise . . . and [Cipercen's] fulfillment of its obligations regarding such renewal or transfer contained in the Agreement for said Center, including but not limited to the payment of all amounts owed to Meineke for [Cipercen's] operation of the Center, Meineke . . . hereby releases [Cipercen] and its guarantors from any and all duties, responsibilities, and claims that they have or may have now or at any time in the future arising out of the Agreement, except for the any express obligation or obligations which shall by their terms continue in force beyond the extension of the Agreement and regardless of the basis or the manner of the extension.[20]

Cipercen and Morningside entered into the APA on January 8, 2018.[21] The APA provides that Morningside would purchase the seven Meineke Centers for $600,000.[22] Cipercen and Morningside later extended the APA's anticipated closing date to March 30, 2018.[23] Cipercen surrendered the Meineke Centers to Morningside ahead of closing, "with the understanding that Morningside would pay the consideration for the APA to an escrow agent by the extended closing date of March 30, 2018."[24] But Morningside failed to pay the consideration

---

[17] Third-Party Compl. at ¶ 42.
[18] *Id.* at ¶ 43.
[19] *Id.*, Ex. A at 1.
[20] *Id.*, Ex. A at 2.
[21] Third-Party Compl. at ¶ 44.
[22] *Id.*
[23] *Id.*
[24] *Id.*

5

under the APA.[25] On April 28, 2018, Morningside "confirmed that Morningside did not intend to pay the $600,000 under the APA."[26] In the Complaint against Morningside, Cipercen pleaded that the APA never formally closed and that the IRS Lien has not been satisfied.[27]

In July 2019, Cipercen filed an action against Morningside in the District of Delaware.[28] In response, Morningside filed a claim against Cipercen alleging Cipercen had Accounts Payable due and owing to Meineke for the Outstanding Franchise Fees and that Meineke had assigned a portion of those amounts to Morningside.[29] According to the Third-Party Complaint, this was the first time Cipercen heard of any such assignment.[30] Moreover, Cipercen believed that Meineke released any claim for the Outstanding Franchise Fees.[31] Through discovery, Cipercen learned the assignment had occurred in September 2019—two months after Cipercen initially sued Morningside and one month before Morningside filed the claim against Cipercen.[32] The District of Delaware action was dismissed and re-filed in this Court.[33]

Cipercen filed a Third-Party Complaint against the Meineke Defendants alleging fraudulent inducement and interference with prospective economic advantage.[34] Both claims rest on the email that Mr. Todd sent to Cipercen on October 18, 2017. The fraudulent inducement claim alleges the Meineke Defendants, through Mr. Todd, "falsely and intentionally misrepresented" to Cipercen that the Meineke Defendants "would write off the Outstanding Franchise Fees if Cipercen agreed to sell the [Sale] Centers to Morningside."[35] According to

---

[25] *Id.* at ¶ 45.
[26] *Id.*
[27] *See* Compl. at ¶¶ 30–33 (D.I. 1).
[28] Third-Part Comp. at ¶ 46.
[29] *Id.* at ¶ 47.
[30] *Id.* at ¶¶ 47–49.
[31] *Id.*
[32] *Id.* at ¶ 50.
[33] *Id.* at ¶ 48.
[34] *Id.* at ¶¶ 52–70.
[35] *Id.* at ¶ 53.

6

Cipercen, the Meineke Defendants "intentionally concealed material facts, including their role in Morningside's non-performance of the APA, the fact that they had no intention of honoring their own promises to Cipercen in connection with that transaction, or that they did not intend to honor the Release."[36] Cipercen suggests that further evidence of the alleged fraud lies in Meineke's assignment of the right to collect the Outstanding Franchise Fees to Morningside, "[n]otwithstanding . . . [the] signed release of the Outstanding Franchise Fees."[37]

The claim for interference with prospective economic advantage also relies on Mr. Todd's email and borrows much of its language from the previous claim. Cipercen alleges it would have accepted the other purchase offers it had received (*i.e.*, offers from entities other than Morningside) but for Mr. Todd "represent[ing] that Meineke Defendants would write off the Outstanding Franchise Fees if Cipercen agreed to sell the Meineke Centers to Morningside."[38] Cipercen sold to Morningside in reliance on Mr. Todd's representations, thereby losing the opportunity to conduct a sale with a different buyer.[39]

Meineke filed two counterclaims against Cipercen. First, Meineke alleges Cipercen breached the Franchise Agreements between itself and Cipercen by failing to pay the Outstanding Franchise Fees due to Meineke.[40] Meineke alleges the total amount due is $1,152,013.98, and because Meineke assigned $549,337.98 of that amount to Morningside, Meineke is owed $602,676.[41] Second, Meineke alleges Cipercen breached each of the Releases by failing to pay the Outstanding Franchise Fees.[42]

---

[36] *Id.* at ¶ 54.
[37] *Id.* at ¶ 57.
[38] *See id.* at ¶¶ 68–69.
[39] *Id.* at ¶ 69.
[40] *See* Meineke's Third-Party Counterclaim at ¶¶ 28–35 (D.I. 46).
[41] *See id.* at ¶¶ 23–25.
[42] *See id.* at ¶¶ 36–40.

7

As stated above, Meineke moved to dismiss to Cipercen's Third-Party Complaint,[43] and Cipercen moved to dismiss Meineke's claim for breach of the Franchise Agreements.[44] The Court heard argument on June 7, 2022.[45] The parties then filed supplemental briefing addressing whether Meineke's counterclaim is time-barred.[46]

## III. STANDARD OF REVIEW

Under Delaware law, a party may move to dismiss under this Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[47] In considering a Rule 12(b)(6) motion, the Court (i) accepts as true all well-pleaded factual allegations in the complaint; (ii) credits vague allegations if they give the opposing party notice of the claim; (iii) draws all reasonable factual inferences in favor of the non-moving party; and (iv) denies dismissal if recovery on the claim is reasonably conceivable.[48] The Court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[49] Delaware's pleading standard is "minimal."[50] Dismissal is inappropriate unless "under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[51]

---

[43] Meineke's Mot. to Dismiss Third-Party Compl. (D.I. 47).

[44] Cipercen's Mot. to Dismiss Counterclaim (D.I. 56).

[45] D.I. 75.

[46] *See* D.I. 77–78.

[47] Del. Super. Civ. R. 12(b)(6).

[48] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

[49] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018).

[50] *Cent. Mortg.*, 27 A.3d at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 895 (Del. 2002)).

[51] *Unbound Partners Ltd. P'ship v. Invoy Holdings Inc.*, 251 A.3d 1016, 1023 (Del. Super. 2021) (internal quotation marks omitted); *see Cent. Mortg.*, 27 A.3d at 537 n.13 ("Our governing 'conceivability' standard is more akin to 'possibility . . . .'").

In general, a claim's reasonable conceivability cannot be determined through "matters outside the pleadings."[52] But, "for carefully limited purposes,"[53] the Court may consider "matters outside the pleadings when the document is integral to . . . a claim and incorporated into the complaint."[54] "[A] claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law."[55]

## IV.    PARTIES' CONTENTIONS

### A. THE MEINEKE MOTION TO DISMISS

The Meineke Defendants argue that Cipercen's third-party claims should be dismissed because Cipercen released its claims against Meineke in the Releases.[56] Cipercen opposes and contends that the Releases do not bar the third-party claims because: (1) the claims do not fall within the contractual language of the Releases as the claims are "not based on the franchise relationship between Cipercen and Meineke, but rather arises from tortious conduct outside those agreements;" (2) the Releases fail for lack of consideration; and (3) the Releases are void "because Cipercen was unaware of Meineke's fraud as of the signing of the Releases."[57]

The Meineke Defendants also argue that the fraudulent inducement third-party claim should be dismissed because Cipercen has not pleaded fraud with particularity, as required under Civil Rule 9(b). The Meineke Defendants claim Cipercen's pleadings "fail[] to describe the contents of the alleged fraud" and instead allude to it only in general, conclusory terms.[58]

---

[52] *Windsor I, LLC v. CWCapital Asset Mgmt LLC*, 238 A.3d 863, 872-75 (Del. 2020); *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 68 (Del. 1995).
[53] *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d at 69.
[54] *Windsor I, LLC*, 238 A.3d at 873 (internal quotation marks omitted).
[55] *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001).
[56] Meineke's Mot. to Dismiss Third-Party Compl. at 9–11.
[57] Cipercen's Answering Br. at 5–10 (D.I. 57).
[58] Meineke's Mot. to Dismiss Third-Party Compl. at 11–15.

Cipercen responds that its allegations concerning Mr. Todd's October 18, 2017 email are sufficient under Civil Rule 9(b).[59]

Next, the Meineke Defendants argue that the fraudulent inducement third-party claim fails because Mr. Todd's email contained no false statements or false representations.[60] The Meineke Defendants assert that the email made clear that any waiver of the Outstanding Franchise Fees would be subject to certain conditions, including Cipercen using the proceeds from the sale to satisfy the IRS Lien.[61] Because those conditions were never met, the Meineke Defendants contend the fraudulent inducement third-party claim fails as a matter of law. In response, Cipercen claim that the email "provides clear evidence that Meineke induced Cipercen to sell to Morningside, to the exclusion of other buyers" and "whether the terms of that email Meineke styles as 'conditions' occurred is irrelevant, and in any event not settled on the face of pleadings."[62]

Finally, the Meineke Defendants assert that the tortious interference third-party claim is time-barred under North Carolina's three-year statute of limitations, which the Meineke Defendants argue applies through choice-of-law provisions in the Franchise Agreements and Releases.[63] The Meineke Defendants contend that the cause of action accrued in October 2017—when "all of the events that comprise" that claim transpired—and that Cipercen missed its deadline by filing the Third-Party Complaint forty-one months later, on March 18, 2021.[64] Conversely, Cipercen claims that the cause of action accrued no sooner than March 30, 2018— the extended closing date of the APA.[65] Cipercen claims that date was "the earliest potential

---

[59] Cipercen's Answering Br. at 10–12.
[60] Meineke's Mot. to Dismiss Third-Party Compl. at 15–17.
[61] *Id.* at 16–17.
[62] Cipercen's Answering Br. at 13.
[63] Meineke's Mot. to Dismiss Third-Party Compl. at 17–19.
[64] *Id.* at 19.
[65] Cipercen's Answering Br. at 16–17

marker for Cipercen's injury due to the failure of Meineke's preferred buyer to perform" under the APA.[66]

## B. THE CIPERCEN MOTION TO DISMISS

Cipercen moved to dismiss Meineke's counterclaim for breach of the Franchise Agreements on the grounds that the claim is time-barred. Cipercen argues that the claim accrued no later than March 30, 2018. Cipercen acknowledges that it had been delinquent on the Outstanding Franchise Fees before that date but claims that March 30, 2018 "was the day that Cipercen and Meineke agreed that the franchise relationship was over, and therefore the day Cipercen was obligated to pay any remaining balance of the Franchise Fees."[67] Cipercen also states that "[h]aving committed to that date for purposes of denying Cipercen the benefit of the 2018 Releases, Meineke should not be permitted to retreat from it as the date its claims against Cipercen accrued."[68]

Meineke disagrees. Meineke asserts that its counterclaim accrued on July 31, 2019 because "there is no allegation or evidence supporting the contention that Meineke knew Cipercen broke its promise to either pay the past due amounts or undertake the action necessary to have them forgiven before Cipercen filed its federal court complaint against Morningside."[69] In other words, Meineke contends it had no reason to know that Cipercen's "promise was broken" until that date.[70]

---

[66] *Id.* at 17.
[67] Cipercen's Supp. Br. at 1–2 (D.I. 77).
[68] *Id.* at 2.
[69] Meineke's Supp. Br. at 1–2 (D.I. 76).
[70] *Id.* at 2.

# V.  ANALYSIS

The Meineke Motion to Dismiss is **GRANTED** because: (1) Cipercen's fraudulent inducement third-party claim does not adequately plead that the Meineke Defendants made any false statement; and (2) the interference with prospective advantage claim is time-barred.  The Cipercen Motion to Dismiss is **GRANTED** because Meineke's counterclaim for breach of the Franchise Agreements is time-barred.

## A.  THE MEINEKE MOTION TO DISMISS IS GRANTED

### 1.  Cipercen fails to state a claim for fraudulent inducement

The elements of fraudulent inducement are: (1) a false statement or misrepresentation; (2) that the defendant knew was false or made with reckless indifference to the truth; (3) the statement induced the plaintiff to enter the agreement; (4) the plaintiff's reliance was reasonable; and (5) the plaintiff was injured as a result.[71]  Here, the Third-Party Complaint fails to state a claim for fraudulent inducement because it does not adequately plead that the Meineke Defendants made any false statement or misrepresentation.

Cipercen alleges the Meineke Defendants, through Mr. Todd, "falsely and intentionally mispresented to Cipercen that the Meineke Defendants would write off the Outstanding Franchise Fees if Cipercen agreed to sell the Meineke Centers to Morningside."[72]  Belying Cipercen's allegation is the actual text of the email that Mr. Todd sent to Cipercen, which Cipercen omitted from the Third-Party Complaint.  What Mr. Todd said was:

> In addition to the offer submitted by the investor group [*i.e.*, Morningside]. Meineke acknowledges that it will write off the AR is owed to us, given the following facts:
>
> - Proceeds from the $600k offer are used to satisfy the IRS Lien

---

[71] *See, e.g., ITW Glob. Invs. Inc. v. Am. Indus. Partners Cap. Fund IV, L.P.*, 2017 WL 1040711, at *6 (Del. Super. Ct. Mar. 6, 2017) (internal citations omitted).
[72] Third-Party Compl. at ¶ 53.

- Funds in excess of the IRS lien are paid directly to the Meineke
- The current balance owed by the centers is the following $791,730.21
- The centers must remain current until deal close[73]

Mr. Todd clearly stated that Meineke's offer to "write off" the Outstanding Franchise Fees was conditional and not absolute. Cipercen has acknowledged that some of the conditions to the write-off were not satisfied. The APA between Cipercen and Morningside never closed,[74] so the $600,000 in proceeds were not used to satisfy the IRS Lien. Consequently, the funds in excess of the IRS Lien were not remitted to Meineke. Because the "write off" was subject to conditions that were never satisfied, Cipercen has not adequately pleaded that the Meineke Defendants made any false statement or representation through Mr. Todd's email.

Following Mr. Todd's email, Cipercen and the Meineke Defendants formalized the terms of the "write off" through the Releases that Cipercen signed on December 21, 2017. Like the Mr. Todd's email, the Releases provide that the Meineke Defendants' release of Cipercen was "[s]ubject to the renewal, extension, or closing of the sale of the franchise[s]."[75] That never happened. As such, the Releases also did not contain any false statements.[76]

---

[73] Meineke's Mot. to Dismiss Third-Party Compl., Ex. A (D.I. 46).

[74] *See* Third-Party Compl. at ¶ 2 ("In July 2019, Cipercen sued Morningside because Morningside took possession of Cipercen's Meineke Centers without paying the agreed-upon purchase price of $600,000."); *id.* at ¶ 45 ("Morningside did not pay the consideration under the APA by the extended closing date of March 30, 2018. On April 28, 2018, Morningside's lawyers confirmed that Morningside did not intend to pay the $600,000 under the APA.").

[75] *Id.*, Ex. A at ¶ 3.

[76] The Releases are not entirely clear on certain terms. For example, another condition for the Meineke Defendants' release of Cipercen was "Cipercen's fulfillment of its obligations regarding such renewal or transfer [of the franchises] contained in the Agreement for said Center, including but not limited to the payment of all amounts owed to Meineke for Franchisee's operation of the Center." *Id.* It is unclear whether the parties intended for the "amounts owed to Meineke" to refer to the Outstanding Franchise Fees; if interpreted that way, the Releases would not "write off" the Outstanding Franchise Fees even if the APA closed. Regardless of whether the Releases intended to write off the Outstanding Franchise Fees or not, whatever release obligations the Meineke Defendants may have had were "[s]ubject to the renewal, extension, or closing of the sale of the franchise[s]." *Id.* Furthermore,

13

The fraudulent inducement third-party claim also alleges that the Meineke Defendants "intentionally concealed material facts, including their role in Morningside's non-performance of the APA, the fact they had no intention of honoring their own promises to Cipercen in connection with that Transaction, or that they did not intend to honor the Release."[77] Cipercen offers no factual allegations describing the Meineke Defendant's supposed role in Morningside's non-performance. In addition, Cipercen does not plead facts supporting the claim that the Meineke Defendants never intended to honor their obligations. Cipercen appears to reference the Meineke Defendant's conduct in partially assigning the Outstanding Franchise Fees to Morningside.[78] But the Meineke Defendant's offer to waive the Outstanding Franchise Fees was subject to conditions that were never satisfied. Consequently, it is unclear how the Meineke Defendant's *subsequent* partial assignment of those fees could amount to fraudulently inducing Cipercen to enter into the APA.

Cipercen relies too much on too little. The Third-Party Complaint depends on Mr. Todd's email sent to Cipercen. However, that email simply does not represent that the Meineke Defendants would "write off the Outstanding Franchise Fees if Cipercen agreed to sell the Meineke Centers to Morningside," as the Third-Party Complaint claims.[79] Instead, the contents of Mr. Todd's email "effectively negate the claim as a matter of law" because they show the Meineke Defendants made no false statements.[80]

---

Meineke itself appears to interpret the Releases as relieving Cipercen of its obligation to pay the Outstanding Franchise Fees if the conditions in the Releases were satisfied. *See* Meineke's Answering Br. at 3 (D.I. 62).

[77] Third-Party Compl. at ¶ 54.

[78] *See id.* at ¶¶ 47–51.

[79] *Id.* at ¶ 53.

[80] *Malpiede*, 780 A.2d at 1083.

14

Accordingly, the Court does not need to consider whether Cipercen adequately pleaded the other elements of the claim or whether the Releases bar the claim.

### 2. Cipercen's interference with prospective economic advantage third-party claim is time-barred.

The Meineke Defendants argue that the interference with prospective economic third-party claim is barred under North Carolina's three-year statute of limitations.[81] Cipercen agrees the limitations period is three years, although Cipercen relies upon the Delaware statute of limitations and Delaware case law.[82] Regardless, the cause of action accrues on the date of the underlying injury under both Delaware and North Carolina law.[83]

The parties disagree when Cipercen's alleged injury occurred. The Meineke Defendants claim that any injury occurred in October 2017, when "all of the events that comprise" the claim happened.[84] Cipercen contend that the Meineke Defendants err in focusing on the date of Meineke's "*conduct*," rather than on the date of Cipercen's "*injury*."[85] According to Cipercen, "the earliest potential marker for Cipercen's injury due to the failure of Meineke's prefer buyer to perform is not sooner than the date Morningside was supposed to perform the APA and failed to do so"—March 30, 2018.[86]

The Third-Party Complaint supports, rather than refutes, the Meineke Defendants' position. The Third-Party Complaint states that Cipercen had already "received interest from other potential buyers" for the Meineke Centers by September 2017.[87] The

---

[81] Meineke's Mot. to Dismiss Third-Party Compl. at 17–19.
[82] *See* Cipercen's Answering Br. at 16–19.
[83] *See Glynne v. Wilson Med. Ctr.*, 762 S.E.2d 645, 649 (N.C. Ct. App. 2014) (citing N.C. Gen. Stat. § 1–52(5)); *BTIG, LLC v. Palantir Techs., Inc.*, 2020 WL 95660, at *3 (Del. Super. Ct. Jan. 3, 2020).
[84] Meineke's Mot. to Dismiss Third-Party Compl. at 19.
[85] Cipercen's Answering Br. at 16 (emphasis in original).
[86] *Id.* at 17.
[87] Third-Party Compl. at ¶ 65.

Meineke Defendants allegedly interfered with Cipercen's consideration of those offers through the email Mr. Todd sent on October 18, 2017, which induced Cipercen to sign the Morningside LOI on October 19, 2017.[88] Cipercen alleges that "[b]ut for" this interference, Cipercen "would have accepted the other pending offers to purchase the Meineke Centers and continued to solicit offers from other prospective purchasers."[89] The date of Cipercen's alleged injury was October 19, 2017, because that is the date that the Meineke Defendants' alleged interference caused Cipercen to decline the offers it had received and cease soliciting new offers. Because Cipercen filed the Third-Party Complaint on March 18, 2021—more than three years later—the claim is time-barred unless Cipercen has pled and can demonstrate that a tolling exception applies.

Citing Delaware law, Cipercen argues the injury was "inherently unknowable" to Cipercen until October 2019, when Morningside filed a claim against Cipercen for the portion of the Outstanding Franchise Fees that the Meineke had assigned.[90] Cipercen contend that "[u]ntil that point, Cipercen had no reason to inquire as to whether Meineke was associated with Morningside's breach."[91] The Meineke Defendants assert that Cipercen's reliance on Delaware law is misplaced. The Meineke Defendants argue instead that North Carolina governs the claim, and, under that law, the "inherently unknowable" tolling exception does not apply.[92]

The Court finds that North Carolina law applies here. In each of the Franchise Agreements, the Meineke Defendants and Cipercen agreed that "all issues arising from or

---

[88] *Id.* at ¶¶ 68–69.
[89] *Id.* at ¶ 69.
[90] *See* Cipercen's Answering Br. at 17–18 (citing *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004)).
[91] *Id.* at 16.
[92] *See* Meineke's Reply Br. at 16–17.

relating to this Agreement will be governed by and construed under the laws of the State of North Carolina" and that "in the event of any conflict of law, North Carolina will prevail, without regard to the application of North Carolina conflict of law principles."[93] Cipercen's interference claim unambiguously "aris[es] from or relat[es] to"[94] the Franchise Agreements because it alleges that the Meineke Defendants "induce[d] Cipercen to sell the Meineke Centers to Morningside"[95]—and thus terminate the Franchise Agreements.

Cipercen tries avoiding this conclusion by asserting, in a footnote, that this "dispute is not about the breach of the franchise agreements . . . but rather about fraud and fraudulent inducement Meineke committed on Cipercen . . . a conflict governed by the Delaware law."[96] Cipercen's argument is unconvincing because the choice-of-law provision encompasses not only claims for "breach of the franchise agreements," but rather "*all issues arising from or relating to*" the Franchise Agreements. Cipercen's interference claim falls within the plain text of the choice-of-law provision. Thus, North Carolina law governs the claim.

North Carolina statutory law establishes the "discovery rule," which tolls the statute of limitations for torts resulting in certain latent injuries.[97] However, the discovery rule applies only for torts alleging "personal injury or physical damage to claimant's property[.]"[98] Cipercen pleads neither form of injury here. The discovery rule

---

[93] *See* Meineke's Counterclaim, Ex. A (Part 2 of 2) at § 17.1 (D.I. 51).
[94] *Id.*
[95] Third-Party Compl. at ¶ 68.
[96] *See* Cipercen's Answering Br. at 8 n.1.
[97] *See* N.C. Gen. Stat. § 1–52(16); *see also Tate v. Calloway*, 2012 WL 6018139, at *4 (N.C. App. Ct. 2012); *Birtha v. Stonemor, N. Carolina, LLC*, 727 S.E.2d 1, 7 (N.C. App. Ct. 2012).
[98] *Tate*, 2012 WL 6018139, at *4; *see also White v. Consol. Plan., Inc.*, 603 S.E.2d 147, 164 (N.C. App. Ct. 2004) ("By its terms, this provision applies only to claims for 'personal injury or physical damage to claimant's property.'").

therefore does not apply, and the statute of limitations began running on the date of Cipercen's injury.[99]  More than three years passed before Cipercen filed the Third-Party Complaint against the Meineke Defendants.  Accordingly, Cipercen's interference claim is time-barred.

Both of Cipercen's claims against the Meineke Defendants fail as a matter of law. The Court therefore **GRANTS** the Meineke Motion to Dismiss.  To avoid dismissal, Cipercen requests leave to amend the Third-Party Complaint.[100]  For the reasons set forth above, the Court finds that any amendment would be futile and denies Cipercen's request to amend.[101]

### B.  THE CIPERCEN MOTION TO DISMISS IS GRANTED

Count I of Meineke's Counterclaims alleges Cipercen breached the Franchise Agreements by failing to pay the Outstanding Franchise Fees.  Cipercen moved to dismiss Meineke's counterclaim for breach of the Franchise Agreements as time barred.  Cipercen initially argued that the claim accrued on February 28, 2018, when Meineke and Cipercen executed the Releases to terminate the Franchise Agreements.[102]  In response, Meineke submitted that the claim accrued on July 31, 2019 because that is when Cipercen sued Morningside and thus "broke its promises in the agreements with Meineke to pay the outstanding Fees, starting the clock on the statute of limitations."[103]

The parties elaborated on their positions through their supplemental briefing.  Cipercen maintains that the claim accrued no later than March 30, 2018, while Meineke reiterates that the

---

[99] *See Philips v. Pitt Cnty. Mem'l Hosp. Inc.*, 731 S.E.2d 462, 469 n.9 (N.C. App. Ct. 2012) (rejecting the application of the discovery rule to a tortious interference claim).
[100] Cipercen's Answering Br. at 19–20.
[101] *See Clark v. State Farm Mut. Auto. Ins. Co.*, 131 A.3d 806, 816 (Del. 2016).
[102] Cipercen's Mot. to Dismiss Counterclaim at 3.
[103] Meineke's Answering Br. at 3–4.

date is July 31, 2019. Meineke also submitted a tolling agreement the parties executed on July 6, 2021.[104] Cipercen asks the Court to disregard the tolling agreement because Meineke did not raise it in its original answering brief or during argument, and because it is irrelevant.[105]

The parties agree that Meineke's claim is governed by North Carolina law. In North Carolina, the statute of limitations for breach of contract claims is three years and begins to run "on the date of the breach."[106] In other words, the clock "begins to run on the date the promise is broken."[107] The question is when that happened here.

Meineke's factual allegations establish that the statute of limitations began running no later than March 30, 2018. By Meineke's own admission, "Cipercen was obligated to pay any remaining balance of the [Outstanding Franchise] Fees upon termination of the Franchise Agreements."[108] Meineke and Cipercen terminated the Franchise Agreements through the Releases they executed on February 28, 2018.[109] Meineke's release of Cipercen was "subject to the . . . closing of the sale" between Cipercen and Morningside, and Cipercen's fulfillment of its obligations under its Franchise Agreements, "including but not limited to the payment of all amounts owed to Meineke for [Cipercen's] operation of the [Meineke Centers]."[110]

The Releases set the date of closing as the date when Cipercen was required to pay the outstanding amounts. Closing was supposed to occur on March 30, 2018.[111] Using these facts, Cipercen was in breach when March 30, 2018 arrived and the conditions of Meineke's release of

[104] *See* Meineke's Supp. Br., Ex. A.
[105] *See* Letter for Judicial Review, June 23, 2022 (D.I. 78).
[106] *See Scott & Jones, Inc. v. Carlton Ins. Agency, Inc.*, 677 S.E.2d 848, 853 (N.C. App. Ct. 2009) (internal citations omitted).
[107] *Eastpointe Hum. Servs. v. N. Carolina Dep't of Health & Hum. Servs.*, 2022 WL 2439157, at *7 (internal citations omitted).
[108] Meineke's Counterclaim at ¶ 12.
[109] *See id.* at ¶¶ 17–18.
[110] *Id.* at ¶ 19 (citing *id.*, Ex. A at 2).
[111] *Id.* at ¶ 15.

Cipercen failed to materialize. The Court finds that this is the latest date when the cause of action could have accrued, and the statute of limitations began to run. Because Meineke filed its counterclaim for breach of the Franchise Agreements more than three years later, on December 22, 2021, the claim is time-barred.

The tolling agreement does not change this conclusion. The parties agreed that "[a]ny and all statutes of limitations or repose applicable to the Parties' claims and defenses that would have otherwise expired during the time period from March 18, 2021 . . . until the 'Termination Date' . . . shall not expire or lapse until the day immediately following the Termination Date."[112] In turn, the parties agreed that the "Termination Date" would be either: (i) thirty days after either party delivered written notice to terminate the tolling agreement; or (ii) if no notice is sent, then on December 1, 2021.[113] Neither party sent a notice of termination. As such, the tolling agreement terminated on December 1, 2021. That means the tolling agreement preserved Meineke's counterclaim only between March 30, 2021 (*i.e.*, when the statute of limitations would ordinarily have lapsed) through December 1, 2021. Meineke did not file its counterclaim until December 22, 2021. Thus, the counterclaim remains time-barred notwithstanding the tolling agreement.

Because Meineke's counterclaim for breach of the Franchise Agreements is time-barred, the Cipercen Motion to Dismiss is **GRANTED**.

---

[112] Meineke's Supp. Br., Ex. A at 2.
[113] *Id.* at 3.

## VI.    CONCLUSION

For the foregoing reasons, both Motions are **GRANTED**.

**IT IS SO ORDERED**

September 14, 2022
Wilmington, Delaware


                                                    */s/ Eric M. Davis*
                                                    Eric M. Davis, Judge


cc: File&ServeXpress